A09A1020. WATSON v. THE STATE.

(683 SE2d 665)

MILLER, Chief Judge.

A Meriwether County jury convicted Steven Jesse Watson of two counts of aggravated child molestation (OCGA § 16-6-4 (c)) and three counts of child molestation (OCGA § 16-6-4 (a)). Watson appeals from the trial court's order denying his motion for a new trial, arguing that he received ineffective assistance of counsel at trial because his trial counsel failed to call his mother and aunt as witnesses and to challenge the credibility of the victim and the victim's brother. Concluding that Watson failed to establish that his trial counsel's performance was deficient, we affirm.

"The trial court's findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous." (Citation omitted.) *Harvey v. State*, 284 Ga. 8, 10 (4) (660 SE2d 528) (2008).

The victim's mother testified at trial that she formerly dated and lived with Watson. Watson, who lived in Luthersville at the time,

visited the victim's mother in Brunswick several times between September and December 2001. The victim was born December 4, 1987 and was 13 years old when her mother first met Watson. Shortly after Christmas in 2001, the victim's mother, the victim, and the victim's brother moved from Glynn County to Meriwether County to live with Watson, who resided in his mother's trailer. In April or May of 2002, Watson and the victim's family moved to a trailer about half a mile away. The victim's mother and Watson were evicted from that trailer in approximately December 2003 and subsequently resided in a trailer on Watson's mother's property until June 2004, when the relationship between Watson and the victim's mother ended.

The victim testified that Watson began sexually abusing her in Brunwick. She stated that Watson was nice at first but "then he started asking me to flash my breasts at him" and told her that if she refused, he would get her in trouble with her mother. The victim recounted that Watson asked her to go into the bathroom one night, take her pants off, and sit on the toilet so that he could see her vagina. Watson also played "strip football" with the victim.

According to the victim, once the family moved in with Watson's mother, Watson asked her to flash him and to let him touch her vagina, and she allowed him to do these things. The victim further stated that when Watson and her family moved to the trailer down the road, Watson asked her to flash her breasts at him and let him touch and lick her vagina and tried to have intercourse with her in the bathroom. The victim also testified that Watson made her perform oral sex on him one night on the side of the road when the two were on the way home from Wal-Mart in Newnan, and, on another occasion, when she was still 15, Watson had sex with her after the two had driven to Wal-Mart together once again. Finally, according to the victim, Watson came into her room one night before she turned 16 and stuck his fingers in her vagina.

The victim testified that some time in early 2003, a Department of Family and Children Services' worker came to her school to talk to her about the Department's suspicion that Watson was abusing her. The victim denied that any abuse had occurred because Watson had told her that if she told anyone, he would hurt her or her family.

The victim's brother testified at trial that Watson asked him and his sister to play "strip football," but it was only his sister who ended up having to take off her clothes. The victim's brother explained that he was required to seek therapy over his anger at Watson and that he was angry at Watson because he found sexually explicit notes Watson wrote to the victim. The victim's brother testified that he did not tell anybody about the notes because when he found them Watson threatened to kill him, his mother, and the victim, and have sex with

the victim's "dead" body.

Testifying on his own behalf, Watson admitted having sex with the victim a number of times while driving to the store with her but contended that the sex was consensual and that she had turned 16 by this time.

1. Watson claims that his trial counsel was ineffective in failing to call his mother and aunt as witnesses to testify as to his good character and to refute claims that the victim and her brother were afraid of him. We disagree.

> To prevail on a claim of ineffective assistance of trial counsel, [a criminal defendant] must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.

(Citation and punctuation omitted.) *Matthews v. State*, 284 Ga. 819, 821-822 (4) (672 SE2d 633) (2009). "In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[w]here trial counsel does not testify at the motion for a new trial hearing, it is extremely difficult to overcome this presumption." (Punctuation and footnote omitted.) *Davis v. State*, 280 Ga. 442, 443 (2) (629 SE2d 238) (2006).

Here, Watson's trial counsel did not testify at the hearing on the new trial motion. Only Watson testified, and he admitted on cross-examination that following his indictment in February 2006, his trial was continued several times, but he did not inform his trial counsel that he wanted to call his aunt and mother until the day before the jury was selected, when he finally decided to plead not guilty. Watson claimed his trial counsel told him that it would probably not be possible to get another continuance.

Even assuming that trial counsel could have secured a continuance so that he could call Watson's mother and aunt as witnesses, he was never given an opportunity to testify about why he did not attempt to get a continuance or whether he had strategic reasons for not calling Watson's aunt and mother. Under the circumstances, Watson has not overcome the strong presumption that his trial counsel's performance was reasonable. *Brown v. State*, 256 Ga. App. 603, 609 (1) (c) (568 SE2d 727) (2002) ("[I]n the absence of testimony to the contrary, counsel's actions are presumed strategic.") (footnote omitted); see also *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991) (no showing of deficient performance when trial counsel not asked if she had reasons for not calling witnesses). In

addition, neither Watson's mother nor aunt testified at the motion for new trial hearing, and absent a proffer of their testimony, Watson cannot establish prejudice. *Hunt v. State*, 278 Ga. 479, 480-481 (4) (604 SE2d 144) (2004); *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995); *Ponder*, supra, 201 Ga. App. at 389 (1).

2. Watson argues that his trial counsel was ineffective in failing to challenge the credibility of the victim and her brother. We are not persuaded.

With respect to the victim, Watson claims that he wanted his trial counsel to point out that she had "given three different versions of events concerning the alleged molestations." In fact, when cross-examining the victim, Watson's trial counsel attempted to establish that her prior statements to law enforcement were inconsistent with her trial testimony. For example, Watson's trial counsel attempted to establish that a written statement the victim gave to the Georgia Bureau of Investigation in 2005 indicated that she drove to Wal-Mart with Watson after she received her learner's permit in April 2004, when she was already 16. He also questioned the victim about the fact that her written statement indicated that nothing happened between her and Watson when her family was living in Watson's mother's home and, further, said nothing about the incident in which Watson had attempted to have sex with her in the bathroom. Watson's trial counsel also attempted to establish that the victim had made inconsistent statements about whether Watson had ever threatened her and the nature of the threats.

"[T]he degree to which an attorney chooses to cross-examine . . . witnesses and the manner in which to attack their credibility fall within the ambit of trial tactics." (Citation and punctuation omitted.) *Lawrence v. State*, 274 Ga. 794, 795 (3) (560 SE2d 17) (2002). Watson does not describe any other particular ways in which his counsel should have challenged the victim's credibility. Nor did his counsel testify at the motion for new trial hearing about his cross-examination strategy. Under the circumstances, we find no basis for concluding that trial counsel was ineffective.

With respect to the victim's brother, Watson claims that his trial counsel should have established that there was "bad blood" between Watson and the victim's brother, and the two did not get along. Specifically, Watson claims he wanted his lawyer to bring out that the victim's brother had "threatened to get even with the Appellant and make sure he burned in hell." While trial counsel did not ask the victim's brother about this alleged threat, he asked the victim's brother whether he would like to get back at Watson and elicited admissions that the victim's brother did not like Watson and had no use for him. Given the foregoing and the absence of testimony from

trial counsel about his cross-examination strategy, we find no merit in Watson's claim that his trial counsel's cross-examination of the victim's brother was deficient.

For the reasons set forth above, we affirm the trial court's order denying Watson's motion for a new trial.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED AUGUST 17, 2009.

*John D. Rasnick*, for appellant.
*Peter J. Skandalakis, District Attorney*, for appellee.