## A10A0964. CARMICHAEL v. THE STATE.
(700 SE2d 650)

McMURRAY, Senior Appellate Judge.

This case arises out of allegations that Charles Anthony Carmichael beat his pregnant girlfriend during a dispute over money, resulting in severe injuries to the girlfriend and the death of the unborn child. A jury found Carmichael guilty of aggravated assault and feticide, and the trial court denied his motion for a new trial. On appeal, Carmichael contends that the trial court erred in not merging his two convictions and in finding that he received effective assistance from his trial counsel. We disagree and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. *Rouse v. State*, 290 Ga. App. 740 (660 SE2d 476) (2008). So viewed, the evidence showed that Carmichael lived with his girlfriend and her three children in a single family residence in Coweta County. In the early morning hours of January 14, 2006, Carmichael returned home after drinking and began looking for some cash that he believed was in the house. Unable to find the cash, Carmichael became increasingly agitated, pulled his girlfriend out of bed, and ordered her to help him look for the cash. Carmichael's girlfriend was thirty-six weeks pregnant with her fourth child, four weeks from her expected due date.

When neither he nor his pregnant girlfriend could locate the cash, Carmichael began throwing objects around the house "in a rampage," accused his girlfriend of stealing the cash, and physically attacked her. Carmichael struck his girlfriend several times in the head with his fist, repeatedly kneed her in the abdomen, pulled out sections of her hair, and dragged her around the house. Carmichael also struck his girlfriend multiple times with an iron, causing the iron to break. Threatening to kill her, Carmichael kicked his girlfriend until she fell to the ground and beat her with the metal top of a charcoal grill that he retrieved from the back patio.

Eventually, Carmichael passed out, and his girlfriend escaped from the home by climbing out of a back window. She fled to a nearby residence and called 911. Carmichael's girlfriend was rushed to the hospital, where she underwent an emergency caesarean because her unborn child was in fetal distress.[1] Despite the best efforts of the physicians, the fetus was delivered stillborn.

A subsequent autopsy revealed bruising on the scalp of the fetus as well as subarachnoid hemorrhage.[2] The forensic pathologist who

---

[1] Fetal distress is a complication of labor resulting from the fetus not receiving adequate oxygenation.

[2] Subarachnoid hemorrhage is bleeding in the area between the brain and the tissues that cover it.

conducted the autopsy testified that the injuries sustained by the fetus were evidence of trauma and were consistent with a forceful direct blow to the area of the fetus. The forensic pathologist further testified that it was his medical opinion that the physical assault upon the girlfriend caused the death of the fetus, which also was discovered to have a coronary artery abnormality that made the fetus particularly susceptible to any stress placed upon it.

Following the stillborn delivery, police investigators spoke with Carmichael's girlfriend, and she informed them of how Carmichael had attacked her. The investigators observed that the girlfriend had bruising on her abdomen and left arm; a laceration behind her right ear; an abrasion on her neck in the shape of the iron; and tearing of the skin above her eyelid, nose, and lip. Moreover, investigators obtained a search warrant for the home and found evidence corroborating the victim's statement, including a broken iron and the top of a grill, both containing bloodstains. Forensic testing revealed that Carmichael's and his girlfriend's blood was on the broken iron, and Carmichael's blood was on the handle to the grill top.

Police investigators also interviewed Carmichael on two separate occasions after he was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Both interviews occurred on the day of the attack. Carmichael had visible cuts on his hands and bloodstains on his fingers and palms. While Carmichael denied striking his girlfriend during the first interview, he admitted during the second interview that he had punched her.

Carmichael was indicted and tried for the aggravated assault of his girlfriend and feticide. The police investigators testified to the events as set out above, and the state introduced expert testimony regarding fetal development, the autopsy of the fetus, and the bloodstain evidence gathered from the home. Additionally, the state introduced into evidence the photographs of the girlfriend's injuries, of the interior and exterior of the home, and of the cuts and bloodstains on Carmichael's hands, as well as the video recordings of Carmichael's police interviews. While the girlfriend recanted much of her allegations against Carmichael when she took the stand, the state impeached her with her prior statements made to the police investigators. Lastly, the state introduced evidence of prior instances in which Carmichael had physically attacked the victim, including when she was pregnant with one of her older children.

Carmichael chose to testify in his defense. Carmichael conceded that he struck his girlfriend twice because he believed she had stolen his cash, but claimed that he never struck her in the abdomen. He further testified that his girlfriend got hit with the iron, although he claimed that she had simply walked into the trajectory of the iron when he was throwing it around the home in anger. Carmichael also

testified repeatedly that it was his belief that the fetus had been fatally injured when his girlfriend escaped out of the rear window, which he claimed was eight to ten feet off the ground.

After hearing all of the evidence, the jury found Carmichael guilty of the charged offenses. Carmichael moved for a new trial alleging ineffective assistance of his trial counsel, which the trial court denied. This appeal followed.

1. The evidence set forth above was more than sufficient to authorize a rational jury to find Carmichael guilty beyond a reasonable doubt of aggravated assault and feticide. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA §§ 16-5-21 (a) (2); 16-5-80 (a) (2005).[3] It was the role of the jury, not this Court, to assess witness credibility and resolve any evidentiary conflicts. *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

2. Carmichael contends that the trial court should have merged his aggravated assault conviction into his feticide conviction. Under Georgia law, certain convictions merge and multiple punishment is precluded where the same conduct establishes the commission of more than one crime, and the one crime is included in the other as a matter of law or fact. *Verdree v. State*, 299 Ga. App. 673, 683 (6) (683 SE2d 632) (2009). See OCGA § 16-1-7 (a); *Drinkard v. Walker*, 281 Ga. 211, 212-213 (636 SE2d 530) (2006). But the merger doctrine does not apply if each of the charged crimes was committed against a different victim. See *Henderson v. State*, 285 Ga. 240, 244 (3) (675 SE2d 28) (2009); *Biddy v. State*, 253 Ga. 289, 292-293 (2) (319 SE2d 842) (1984); *Phanamixay v. State*, 260 Ga. App. 177, 180-181 (3) (581 SE2d 286) (2003); *Pace v. State*, 239 Ga. App. 506, 509 (6) (521 SE2d 444) (1999). Here, the victim of the aggravated assault was Carmichael's girlfriend, while the victim of the feticide was the girlfriend's unborn child. Accordingly, the two convictions did not merge for sentencing purposes. See id. See also *Ward v. State*, 262 Ga. 293, 299 (14) (417 SE2d 130) (1992) (conviction for murder of mother and conviction for feticide of mother's unborn child did not merge).

---

[3] At the time of the physical attack of the girlfriend, the feticide statute provided: "A person commits the offense of feticide if he willfully kills an unborn child so far developed as to be ordinarily called 'quick' by any injury to the mother of such child, which would be murder if it resulted in the death of such mother." OCGA § 16-5-80 (a) (2005). "Quickening" is the stage of fetal development "when the fetus has developed to the point of being capable of movement within the mother's womb." *Kempson v. State*, 278 Ga. 285, 286 (2) (602 SE2d 587) (2004). The evidence clearly reflected that the girlfriend's fetus had reached that stage of development. The feticide statute was amended in 2006 to expand the definition of "unborn child" to mean a fetus "at any stage of development who is carried in the womb," but the amended statute did not become effective until July 1, 2006. See OCGA § 16-5-80 (a) (2010); Ga. L. 2006, p. 643, §§ 2, 5.

3. Carmichael further contends that the trial court erred in finding that he received effective assistance from his trial counsel. According to Carmichael, his trial counsel was deficient for failing to take photographs of the back of the home to show the distance from the rear window, out of which the girlfriend escaped, to the ground below. Carmichael contends that such photographs should have been taken and introduced into evidence to corroborate his theory at trial that the fetus was fatally injured when his girlfriend jumped from the rear window to escape from the home, rather than during his physical attack of his girlfriend.

> In order to prevail on his claim of ineffective assistance under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), [Carmichael] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.

(Citation and punctuation omitted.) *Hill v. State*, 284 Ga. 521, 522 (2) (668 SE2d 673) (2008). We need not address both the deficiency and prejudice prongs of this test if the showing on one of the prongs is insufficient. *Brown v. State*, 225 Ga. App. 49, 51 (1) (b) (483 SE2d 318) (1997).

Pretermitting whether his trial counsel performed deficiently, we conclude that Carmichael cannot establish that he was prejudiced by the failure to take and introduce into evidence photographs of the home. The state itself introduced photographs of the back of the home, which included the rear windows. There is no ineffective assistance where, as here, trial counsel simply failed to introduce evidence cumulative of other evidence admitted at trial. See *Johnson v. State*, 257 Ga. App. 30, 31 (1) (570 SE2d 344) (2002); *Gordillo v. State*, 255 Ga. App. 73, 77 (3) (b) (ii) (564 SE2d 486) (2002). Carmichael, therefore, cannot show that his trial counsel's performance, even if deficient, resulted in prejudice so as to support a claim of ineffective assistance of counsel. See id. See also *Sanders v. State*, 293 Ga. App. 534, 539-540 (3) (667 SE2d 396) (2008) (defense counsel's failure to take photographs of the home at the time of the alleged crimes did not constitute ineffective assistance because the photographs would have been cumulative of witness testimony concerning the home).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED AUGUST 24, 2010.

*Drummond & Swindle, Jason W. Swindle*, for appellant.

*Peter J. Skandalakis, District Attorney, John B. Cunningham, Assistant District Attorney*, for appellee.