**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

June 15, 2012

# In the Court of Appeals of Georgia

A12A0753. BEARDEN v. THE STATE.

MILLER, Judge.

Following a jury trial, Rodney Allen Bearden was convicted of two counts of theft by taking (OCGA § 16-8-2). Bearden filed a motion for new trial, as amended, which the trial court denied.[1] On appeal, Bearden contends that the State failed to prove that he intended to unlawfully convert funds and also failed to establish venue. Bearden also contends that he received ineffective assistance of counsel. We discern no error and affirm.

---

[1] Bearden filed a notice of appeal following his conviction and subsequently filed his motion for new trial. After the notice of appeal was filed, Bearden obtained new counsel and moved to remand the case for consideration of his claims of ineffective assistance of trial counsel. This Court granted Bearden's motion and remanded for further proceedings. Following a hearing, the trial court denied Bearden's amended motion for new trial.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.

(Citation and punctuation omitted.) *Fogerty v. State*, 304 Ga. App. 546 (1) (696 SE2d 496) (2010).

So viewed, the evidence shows that Bearden, who lived in Smyrna, Georgia, advertised for the construction of modular homes and provided a toll-free number that was linked to his Smyrna residence. Upon seeing Bearden's advertisement, two families residing in Florida contacted Bearden to inquire about the construction of modular homes for them. After several discussions, the families entered into agreements to purchase modular homes through Bearden. With Bearden's assistance, the families obtained financing through Yorktown Funding. The two families finalized their contracts with Bearden and closed on their loans in September 2005.

Bearden subsequently contacted Precision Homes of Ocilla, Georgia, about purchasing a modular home for one of the families (the "Precision-project family"). Precision Homes notified Bearden that he would first need to pay $500 to cover the cost of engineering prints. A Precision Homes representative explained that before paying a deposit, the developer needed to lay the foundation of the home, which

2

required engineering prints and a building permit. Bearden disputed having to pay a deposit since he claimed to have an "exclusive" agreement with Precision Homes, which would have allowed him to buy homes at a discount. However, Precision Homes had previously cancelled the agreement because Bearden had failed to comply with the requirements to maintain an exclusive agreement. Precision Homes informed Bearden that he would have to pay full price for the modular homes, and that he would have to give a 25% deposit before the company would commence construction of any modular home.

Bearden failed to perform under the contracts. Since the Precision-project family was having trouble getting Bearden to complete any work, the family contacted Yorktown Funding about their problems with Bearden. Notwithstanding Bearden's failure to complete any work to construct the modular homes for the Precision-project family, he drew $32,715 against their Yorktown Funding loan. Bearden had also asked for and received $22,029 against the other family's Yorktown Funding loan. Yorktown Funding sent the checks to Bearden's post office box located in Cobb County.

Shortly after receiving the Yorktown Funding checks, Bearden informed the families and Yorktown Funding via written correspondence that he was assigning

3

construction of their modular homes to Precision Homes. Representatives from Precision Homes, however, stated that the company never agreed to accept an assignment to construct the families' modular homes. Precision Homes never received any money from Bearden towards the purchase of engineering prints or as a deposit to start construction of any modular homes.

After receiving Bearden's notice of assignment, the Precision-project family attempted to contact him, but Bearden did not return the family's calls. The family subsequently contacted the United States Secret Service, which initiated an investigation. In its investigation, the Secret Service traced the money that Yorktown Funding had disbursed to Bearden, which had been deposited into two separate bank accounts maintained by Bearden. Since Bearden had not done any work to start construction of the modular homes, the Secret Service initiated a civil seizure to recover the funds. The Secret Service recovered some, but not all, of the money, disbursed to Bearden, and it returned the seized money to Yorktown Funding to be applied against the families' respective loans. Bearden was subsequently arrested and charged with two counts of theft by taking.

1. Bearden contends that the State failed to prove that he intended to convert lawfully acquired funds for his own use. We disagree.

4

"A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2.

> Under the statute, the phrase "regardless of the manner in which the property is taken or approrpriated" is a catch-all phrase rendering theft by taking broad enough to encompass theft by conversion, . . . or any other of the myriad and even yet-to-be-concocted schemes for depriving people of their property. In a case such as this, when the alleged taking occurs when a defendant fails to perform under a contract with the victim, the "real issue" is whether the defendant accepted or retained the victim's money with no intention to satisfy his obligations under the contract.

(Citations and punctuation omitted.) *Smith v. State*, 265 Ga. App. 57, 59 (1) (592 SE2d 871) (2004). Moreover,

> [i]ntent may be found by the jury upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is being prosecuted. Whether a defendant has the requisite intent to commit a crime is a question for the jury.

(Footnote omitted.) *Adams v. State*, 284 Ga. App. 534, 535 (1) (644 SE2d 426) (2007).

Here, shortly after Bearden received checks for the purpose of starting construction of the victims' modular homes, Bearden abandoned the respective

5

projects without accomplishing any task towards completion of the modular homes. Significantly, despite receiving almost $55,000 for both projects, Bearden failed to pay the requisite deposits to obtain the engineering plans for the modular homes. While he contends that he was not required to pay this fee since he was an "exclusive" provider for Precision Homes, the company denied the existence of an "exclusive agreement" with Bearden. Moreover, Precision Homes was not a party to the contracts and denied accepting any assignment from Bearden to complete the modular home projects for the families. After informing the families that he "assigned" completion of the projects to Precision Homes, Bearden refused to return the families' telephone calls. The evidence established that Bearden had drawn $32,725 and $22,029 from the families' loans, but failed to construct the modular homes, and further failed to return any of their funds. Under these circumstances, the jury was authorized to infer that Bearden acted with fraudulent intent and to find him guilty of theft by taking. See *Smith*, supra, 265 Ga. App. at 59 (1) (evidence was sufficient to support conviction for theft by taking where defendant abandoned project and failed to refund unearned portion of down payment to victims); see also *Cox v. State*, 275 Ga. App. 895, 895-896 (622 SE2d 11) (2005) (evidence was sufficient to authorize jury to infer that defendant fraudulently converted money for

6

his own use where he received the money, he failed to use it for the specified purpose, and failed to return the victim's telephone calls).

2. Bearden also contends that the State failed to prove venue in Cobb County. We disagree.

"Generally, a criminal action must be tried in the county in which the crime was committed, and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence." (Citation, punctuation, and footnote omitted.) *Scott v. State*, 302 Ga. App. 111, 112 (1) (a) (690 SE2d 242) (2010).

> In the trial of a theft by taking case, "the crime shall be considered as having been committed in any county in which the accused exercised control over the property which was the subject of the theft," OCGA § 16-8-11, and the State bears the burden of proving that the defendant exercised control over the property taken in the county where the case was prosecuted.

(Citation and punctuation omitted.) *Williams v. State*, 297 Ga. App. 150, 151 (2) (676 SE2d 805) (2009). Consequently, in the prosecution of theft by taking, venue is proper in the county where the checks were taken or deposited. *Gautreaux v. State*, 314 Ga. App. 103, 106 (1) (722 SE2d 915) (2012); see also *Naylor v. State*, 257 Ga. App. 899, 900 (572 SE2d 410) (2002) ("[I]n theft by conversion cases, where the

allegedly converted property is money, . . . the [S]tate can proceed in the county where the accused received the money.") (punctuation omitted).

Here, the Secret Service agent testified that during her investigation, she discovered that the Yorktown Funding checks disbursed from the families' loans were sent to Bearden at his mailbox located in Cobb County. Based on this evidence, venue was sufficiently established. See *Queen v. State*, 210 Ga. App. 588, 589 (1) (436 SE2d 714) (1993) (venue established where defendant directed victims to send checks to his agent and agent physically received checks in relevant county); *Hawkins v. State*, 167 Ga. App. 143, 147 (5) (305 SE2d 797) (1983) (in prosecution for theft by taking, venue was proper in county in which subject insurance premium checks were obtained, notwithstanding fact that checks were deposited in a different county); OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

3. Bearden further contends that his trial counsel provided ineffective assistance of counsel.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U.

8

S. 668, 687 [104 SC 2052, 80 LE2d 674] (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation omitted.) *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010). Applying these standards, we turn to review Bearden's claims.

(a) Bearden first contends that his trial counsel was ineffective for failing to call certain "key" witnesses to his defense.

Here, trial counsel did not testify at the motion for new trial hearing. Consequently, "in the absence of testimony to the contrary, counsel's actions are presumed strategic." (Citations and punctuation omitted.) *Watson v. State*, 299 Ga. App. 702, 704 (1) (683 SE2d 665) (2009); see also *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991) (no showing of deficient performance when trial counsel was not asked if she had reasons for not calling witnesses). Moreover, assuming, arguendo, that counsel was deficient for failing to call the subject

9

witnesses, Bearden did not call the witnesses to testify at the hearing on his motion for new trial or make a proffer as to their testimony. Absent a proffer of the subject witnesses' testimony, Bearden cannot establish that his defense was prejudiced by trial counsel's failure to call these witnesses at trial. See, e.g., *Watson*, supra, 299 Ga. App. at 705 (1); *Wheat v. State*, 282 Ga. App. 655, 657 (1) (b) (639 SE2d 578) (2006).

(b) Bearden also contends that trial counsel was deficient by failing to present additional evidence showing Precision Homes breached its contract with Bearden to provide modular homes under an "exclusive" agreement – an agreement which Bearden argues prevented him from fulfilling his contractual obligations to the families. However, "[i]n evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and where trial counsel does not testify at the motion for a new trial hearing, it is extremely difficult to overcome this presumption." (Citation and punctuation omitted.) *Watson*, supra, 299 Ga. App. at 704 (1).

Here, trial counsel did not testify at the motion for new trial hearing. As such, Bearden failed to show that trial counsel's actions were not strategic. See *Watson*, supra, 299 Ga. App. at 704 (1). Moreover, even if trial counsel performed deficiently

10

by failing to introduce additional exhibits of Bearden's purported "exclusive" agreement with Precision Homes, we conclude that Bearden cannot establish that he was prejudiced by counsel's performance. Significantly, some of the evidence Bearden asserts should have been introduced was, in fact, used at trial, and other trial evidence reflected Bearden's assertion of an "exclusive" right to sell modular homes made by Precision Homes. As a result, "[t]here is no ineffective assistance where, as here, trial counsel simply failed to introduce evidence cumulative of other evidence admitted at trial." (Citations and punctuation omitted.) *Carmichael v. State*, 305 Ga. App. 651, 654 (3) (700 SE2d 650) (2010).

(c) Bearden next contends that trial counsel was ineffective for failing to object on hearsay grounds to portions of the Secret Service agent's testimony regarding details of Bearden's bank accounts and the delivery of Yorktown Funding checks to Bearden's post-office box in Smyrna, Georgia. Again, Bearden's contention is foreclosed by his failure to call trial counsel to testify at the hearing on his motion for new trial. See *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012) (the defendant failed to show that counsel was deficient for failing to object to certain hearsay where there was no testimony from trial counsel regrading the decisions he made at trial). Moreover, contrary to Bearden's arguments otherwise, the Secret

11

Service agent's testimony about what she learned during her investigation was not hearsay since she did not repeat the testimony of an out-of-court declarant. See *Smith v. State*, 274 Ga. App. 852, 854 (2) (619 SE2d 358) (2005). "Failing to make a meritless objection to admissible evidence does not constitute deficient performance, and thus, appellant's ineffective assistance of counsel claim cannot be sustained." (Citation and punctuation omitted.) *Hammock v. State*, 311 Ga. App. 344, 346 (2) (a) (715 SE2d 709) (2011).

(d) Finally, in light of our holdings in Divisions 1 and 2 above, that the evidence was sufficient to sustain the convictions and to establish venue, there is no merit to Bearden's claim that his counsel was ineffective for failing to move for a directed verdict of acquittal on these issues. Cf. *Ballard v. State*, 268 Ga. App. 55, 60 (5) (a) (601 SE2d 434) (2004) (where evidence was sufficient to sustain convictions, counsel was not deficient for failing to move for directed verdict).

*Judgment affirmed. Mikell, P. J., and Blackwell, J., concur.*