**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 28, 2021**

# In the Court of Appeals of Georgia

A21A0782. CLEMMONS v. THE STATE.

BARNES, Presiding Judge.

A Spalding County jury found Armed Cortez Clemmons guilty of aggravated child molestation, two counts of child molestation, and other offenses based on evidence that he arranged sexual encounters between an underage female victim and other men. The trial court thereafter denied his motion for new trial, as amended. On appeal, Clemmons argues that the evidence was insufficient to convict him under the theory that he was a party to the crimes; that certain convictions must be reversed because there were other statutes that prohibited the same aiding-and-abetting conduct; that the trial court committed plain error by improperly commenting on the evidence during an instruction to the jury; and that his trial counsel rendered

ineffective assistance by failing to object to the trial court's comment on the evidence. We affirm for the reasons set forth below.

1. In reviewing Clemmons's challenge to the sufficiency of the evidence, we decide only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony and weighs the evidence. *Platt v. State*, 335 Ga. App. 49, 49 (1) (778 SE2d 416) (2015). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Robinson v. State*, 296 Ga. App. 561, 562 (675 SE2d 298) (2009).

Viewed in this manner, the evidence showed that in early 2016, J. C., a 14-year-old girl who had a history of running away from home, was told by an acquaintance named Tez that she could make "fast money" if she was willing to "sell [her] body." Tez explained that J. C. "would be posted" online, men would call her, she would meet the men and have sex with them, and she then would hand over the

2

money that she got from the men. Tez said that his brother, Clemmons, would pick her up and "it [would] go from there."

J. C. subsequently met with Clemmons, who arranged for her to prostitute herself through online advertisements. To that end, Clemmons requested that J. C. provide him with photographs of herself, and she complied. Clemmons used the photographs to create a series of advertisements for J. C. on Backpage.com under the section of the website for escorts.[1] Clemmons paid for the online advertisements, arranged the sexual encounters between J. C. and the men who responded to the advertisements, set the prices for the sexual acts performed by J. C., and drove J. C. to a Spalding County hotel and other locations for the encounters with the men. Clemmons would wait outside while J. C. met with the men, and he would take the money from J. C. after the sexual encounters. Clemmons would pay to get J. C.'s hair and nails done for her, would give her money and food, and promised to help her get a car. Clemmons also had sexual intercourse with J. C. multiple times at his house in a different county.

---

[1] Backpage.com was a website where users could post classified advertisements, including ads for escorts. See *United States v. Whyte*, 928 F3d 1317, 1323 (I) (11th Cir. 2019); *Jane Doe No. 1 v. Backpage.com*, 817 F3d 12, 16 (I) (1st Cir. 2016). Federal law enforcement officers seized the website in April 2018. See *Sivonda v. State*, 353 Ga. App. 762, 762, n. 1 (839 SE2d 251) (2020).

At trial, J. C. described several specific occasions when she was 14 years old and Clemmons drove her to locations to perform sexual acts with men in exchange for money. On one occasion, Clemmons set up a meeting between J. C. and a man at a hotel in Spalding County. Clemmons drove J. C. there, coached her on what to do, and waited outside while J. C. went inside the hotel room. J. C. performed oral sex on the man at the hotel and had sexual intercourse with him in exchange for $50. Once they were finished, J. C. left the hotel room, got back in the car with Clemmons, and gave him the money. On a different occasion, Clemmons arranged for J. C. to engage in a sexual encounter at a Spalding County house, but J. C. became uneasy when the man there raised an issue about the money, and she fled before the encounter occurred and had Clemmons pick her up. Separately, there was an occasion in which Clemmons drove J. C. to a house where a man performed oral sex on her and had sexual intercourse with her in exchange for $50. After the man paid her, J. C. got back in the car with Clemmons and gave him the money. The last occasion occurred on a night when Clemmons asked J. C. to have sexual intercourse with his friend in exchange for gas money. J. C. initially refused, but Clemmons convinced her to get into his car and go to the friend's house in Spalding County. J. C. had sexual intercourse with the friend, who paid her, and she gave the money to Clemmons.

4

The sexual encounters arranged by Clemmons ended in April 2016, when J. C. was sentenced to serve time in a juvenile detention center after committing a probation violation unrelated to this case. While J. C. was in detention, her father kept her cell phone and noticed that she was constantly receiving text messages and phone calls. Her father checked the text messages and discovered that men were soliciting J. C. to have sex with them and were asking for and sending explicit photographs. J. C.'s father contacted the Griffin Police Department about the text messages, and a police investigation ensued.

During their investigation, law enforcement officers located the advertisements for J. C. on Backpage.com, and, through a series of subpoenas and search warrants, they linked Clemmons to a cell phone number and email address that were used to post the advertisements. The officers also discovered Backpage.com advertisements for another young girl that had similar wording and pricing that were linked to Clemmons's cell phone number and email address. Additionally, officers executed a search warrant and obtained messages to and from Tez and Clemmons on Facebook Messenger that referred to having "hoes at da room," a "couple little sluts lined up," and to "Shawty" being 14.

Clemmons subsequently was indicted for aggravated child molestation, two counts of child molestation, sodomy, trafficking a person for sexual servitude, enticing a child for indecent purposes, pimping a person under the age of 18, and computer pornography. The indictment specifically alleged that with respect to the aggravated child molestation, child molestation, and sodomy counts, Clemmons was a party to the crimes.

At the ensuing jury trial, J. C. testified to events as summarized above. Among other witnesses, the State called J. C.'s father who testified about the text messages he discovered on her cell phone; a friend of J. C. who testified about an occasion in which Clemmons arranged a sexual encounter between her, J. C., and a male buyer that ultimately fell through; the law enforcement officers who located the Backpage.com advertisements and linked them to Clemmons; and an expert on sex trafficking. The State also introduced into evidence screen shots of the Backpage.com advertisements for J. C. and the other young girl, as well as the messages to and from Tez and Clemmons on Facebook Messenger, among other exhibits. Clemmons elected not to testify and did not call any witnesses. Following its deliberations, the jury found Clemmons guilty on all counts of the indictment.

On appeal, Clemmons maintains that the evidence was insufficient to support his convictions on Count 1 (aggravated child molestation) and Count 2 (child molestation) under the theory that he was a party to those crimes.[2] We are unpersuaded.

A defendant commits the criminal offense of child molestation when he "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). The crime advances to one of aggravated child molestation when the molestation "involves an act of sodomy." OCGA § 16-6-4 (c). Here, the indictment alleged that Clemmons committed the offenses of aggravated child molestation and child molestation by acting as a party to those crimes.

Under Georgia law, "a participant in a crime may be convicted of the crime without having directly committed the crime." *Coggins v. State*, 275 Ga. 479, 480 (1) (569 SE2d 505) (2002). As we have explained,

---

[2] Clemmons also challenges the sufficiency of the evidence to support his convictions on Count 3 (child molestation) and Count 4 (sodomy). But the trial court merged Counts 3 and 4 into Counts 1 and 2 for sentencing purposes, and thus Clemmons's sufficiency argument as to Counts 3 and 4 is moot and will not be addressed. See *Morris v. State*, 310 Ga. 443, 443, n. 2 (851 SE2d 593) (2020).

a person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime. So long as the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abettor. Whether a defendant was a party to the charged crime is normally a question for the jury.

(Citations and punctuation omitted.) *Platt*, 335 Ga. App. at 53 (1) (a). See OCGA § 16-2-20.

Applying these principles, our Supreme Court has held that "[e]vidence establishing that [the defendant] was present at the scene of the crime, had knowledge the crime was to be committed and approved of the planned commission of the crime, and had aided the commission of the crime by bringing the victim to the site was sufficient" to support a conviction under a party-to-the-crime theory. *Coggins v. State*, 275 Ga. 479, 480 (1) (569 SE2d 505) (2002). And we have upheld child molestation convictions against sufficiency challenges where there was evidence that

8

the defendant aided and abetted the crimes by encouraging and facilitating sexual encounters between the underage victim and a third party. See *Dockery v. State*, 309 Ga. App. 584, 586-587 (1) (711 SE2d 100) (2011) (affirming defendant's conviction as a party to the crime of child molestation, where the defendant was present for the acts of child molestation committed by her husband, and the defendant gave the underage victim alcohol, thong panties, and pornographic material to read shortly before the molestation occurred); *Newman v. State*, 286 Ga. App. 353, 354, 355 (1) (b) (649 SE2d 349) (2007) (affirming defendant's conviction as a party to the crime of child molestation, where the defendant instructed the underage victim to put cream on her ex-husband's penis); *Hixon v. State*, 251 Ga. App. 27, 28-29 (1) (553 SE2d 333) (2001) (affirming defendant's conviction as a party to the crime of child molestation, where the defendant, among other things, instructed the underage victim to have sexual intercourse with an adult man).

Construed in the light most favorable to the verdict, J. C.'s testimony and the other evidence introduced by the State reflected that Clemmons was present at the locations where the sexual encounters between J. C. and the men occurred, had knowledge that the encounters were to take place and approved of them, and encouraged and facilitated the encounters by, among other things, posting the

9

Backpage.com advertisements, arranging the encounters with the men, and driving J. C. to the locations. Based on this combined evidence and the case law previously discussed, we conclude that a rational jury was authorized to find Clemmons guilty beyond a reasonable doubt as a party to the crimes of aggravated child molestation and child molestation. *Jackson*, 443 U.S. at 319 (III) (B). See *Coggins*, 275 Ga. at 480 (1); *Dockery*, 309 Ga. App. at 586-587 (1); *Newman*, 286 Ga. App. at 355 (1) (b); *Hixon*, 251 Ga. App. at 28-29 (1).

Clemmons, however, emphasizes that the evidence showed that he was J. C.'s pimp, and he maintains that a pimp cannot be a party to a crime committed by a buyer or "John" because the seller of sex and buyer of sex are not acting in concert to commit the same crime. He analogizes to the buyer-seller rule discussed in narcotics cases under which

> the mere agreement of one person to buy contraband which another agrees to sell does not establish that the two acted in concert so as to support a finding of conspiracy. This is because they are not acting together to commit the same crime. In such circumstance, the buyer's purpose is to buy; the seller's purpose is to sell. There is no joint objective.

10

(Citations, punctuation, and footnotes omitted.) *Pruitt v. State*, 264 Ga. App. 44, 47 (2) (589 SE2d 864) (2003). See *Griffin v. State*, 294 Ga. 325, 327-328 (751 SE2d 773) (2013) ("[A] simple buy-sell transaction, without more, does not support a conspiracy conviction under Georgia law.").

But the buyer-seller rule relied upon by Clemmons arises in narcotics cases where the only two parties are the buyer and seller participating in a sales transaction and the State relies on the law of conspiracy to secure a conviction. That is a far cry from the situation here, which involves a third party, an underage victim, who is sexually exploited by the other two parties. Furthermore, Clemmons's convictions for aggravated child molestation and child molestation were not predicated on and did not require proof of a buy-sell transaction, Clemmons was not charged with the crime of conspiracy, and the jury was not instructed on the law of conspiracy. Under these circumstances, Clemmons's reliance on the buyer-seller rule is misplaced and provides no basis for reversal.

2. Relying on *Harden v. State*, 184 Ga. App. 371 (361 SE2d 696) (1987), Clemmons also argues that his convictions for aiding and abetting aggravated child molestation and child molestation should be reversed because, he maintains, there are

11

more specific statutes that prohibit that conduct – Trafficking of Persons for Sexual

Servitude[3] and Pimping of a Person under the Age of 18.[4]

_____

[3] The trafficking statute provides in part:
A person commits the offense of trafficking an individual for sexual servitude when that person knowingly:
(1) Subjects an individual to or maintains an individual in sexual servitude;
(2) Recruits, entices, harbors, transports, provides, solicits, patronizes, or obtains by any means an individual for the purpose of sexual servitude; or
(3) Benefits financially or by receiving anything of value from the sexual servitude of another.
OCGA § 16-5-46 (c).

[4] The pimping statute provides:
A person commits the offense of pimping when he or she performs any of the following acts:
(1) Offers or agrees to procure a prostitute for another;
(2) Offers or agrees to arrange a meeting of persons for the purpose of prostitution;
(3) Directs or transports another person to a place when he or she knows or should know that the direction or transportation is for the purpose of prostitution;
(4) Receives money or other thing of value from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution; or
(5) Aids or abets, counsels, or commands another in the commission of prostitution or aids or assists in prostitution where the proceeds or profits derived therefrom are to be divided on a pro rata basis.
OCGA § 16-6-11. "A person convicted of [pimping] when such offense involves the conduct of a person under the age of 18 years shall be guilty of a felony[.]" OCGA § 16-6-13 (b) (2).

12

The present case is not analogous to *Harden*. In that case, the defendant was convicted of escape (OCGA § 16-10-52)[5] under an aiding-and-abetting theory, but we reversed his conviction, concluding that the general aiding-and-abetting statutory provision (OCGA § 16-2-20 (b) (3))[6] and the escape statute did not apply to a person who aided another person's escape from confinement, given that the legislature had enacted a more specific statute creating criminal liability for aiding escape that imposed a different punishment (OCGA § 16-10-53 (a)).[7] See *Harden*, 184 Ga. App. at 372. We reasoned that "[b]y defining the offense of escape from confinement in one statute and defining the offense of aiding another in escaping from confinement as an independent offense in a separate statute, the legislature clearly created two separate offenses" that were mutually exclusive and intended to "preempt[ ] OCGA § 16-2-20 (b) (3)." (Emphasis omitted.) Id. Accordingly, we concluded that "it was

---

[5] See OCGA § 16-10-52 (a) (defining offense of escape), (b) (setting forth punishment for escape).

[6] OCGA § 16-2-20 (b) (3) provides: "A person is concerned in the commission of a crime only if he[ ] . . . [i]ntentionally aids or abets in the commission of the crime[.]".

[7] OCGA § 16-10-53 (a) provides: "A person who knowingly aids another in escaping from lawful custody or from any place of lawful confinement shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years."

13

improper to charge and convict [the defendant] as an aider and abettor to the offense of escape from confinement, and [that] his conviction for that offense [could not] stand." Id. at 373.

In contrast to the situation in *Harden*, the legislature has not enacted a separate, more specific statute making aiding and abetting aggravated child molestation or aiding and abetting child molestation an independent offense with a different punishment. While Clemmons relies on the trafficking and pimping statutes, those statutes contain different elements and require different proof than aiding and abetting aggravated child molestation or aiding and abetting child molestation. The pertinent provision of the trafficking statute requires proof that the defendant knowingly recruited, enticed, harbored, transported, provided, solicited, patronized, or obtained by any means "an individual for the purpose of sexual servitude," OCGA § 16-5-46 (c) (2),[8] while aiding and abetting aggravated child molestation and child molestation

---

[8] The trafficking statute defines "sexual servitude" as follows:

"Sexual servitude" means any sexually explicit conduct or performance involving sexually explicit conduct for which anything of value is directly or indirectly given, promised to, or received by any individual, which conduct is induced or obtained:
(A) By coercion or deception;
(B) From an individual who is under the age of 18 years;
(C) From an individual whom the accused believes to be under the age of 18 years;

14

have no such sexual servitude requirement. See OCGA § 16-6-4 (a) (1), (c).

Moreover, the trafficking statute provides that "[e]ach violation of this Code section

shall constitute a separate offense and shall not merge with any other offense,"

OCGA § 16-5-46 (i), and in light of this language, the legislature clearly intended that

the trafficking statute not foreclose a defendant's conviction under other criminal

statutes. As to the pimping statute, that statute requires proof of conduct relating to

prostitution,[9] see OCGA § 16-6-11, while aiding and abetting aggravated child

molestation and child molestation do not. See OCGA § 16-6-4 (a) (1), (c).

Conversely, aiding and abetting aggravated child molestation and child molestation

require proof that the defendant acted "with the intent to arouse or satisfy the sexual

desires of either the child or the person," OCGA § 16-6-4 (a) (1), and neither the

trafficking statute nor the pimping statute require proof of such intent. See OCGA §§

---

(D) From an individual who has a developmental disability; or
(E) From an individual whom the accused believes to have a
developmental disability.

OCGA § 16-5-46 (a) (8).

[9] "Prostitution" refers to the circumstance where a person "performs or offers or consents to perform a sexual act, including, but not limited to, sexual intercourse or sodomy, for money or other items of value." OCGA § 16-6-9. A person must be "18 years of age or older" to be convicted of prostitution, see id., but that age restriction does not apply to the pimping statute. See OCGA § 16-6-13 (b) (2).

15

16-5-46 (c) (2); 16-6-11. Hence, the present case clearly does not fit within the narrow circumstance that arose in *Harden* where the General Assembly enacted a specific statute making the aiding and abetting of an underlying offense an entirely separate crime with a different punishment.

3. Clemmons contends that the trial court committed plain error by making an impermissible comment on the evidence in violation of OCGA § 17-8-57. We disagree.

The record reflects that after closing arguments, the trial court chose to recess for the day and have the jurors return the next day to hear the charge of court and begin their deliberations. The trial court instructed the jurors:

> Ladies and gentlemen, as I told you a minute ago, the next step in this process is for me to read the instructions to you about the law that applies to this case; and that's going to take longer than it would – I couldn't finish it by a 5:00 o'clock, and y'all are tired, and it's hard enough to have somebody read anything to you or reading the law to you. It's going to require your full attention.
>
> So what I'm going to do is recess for the day, ask you to come back at 9:00 o'clock in the morning, and go to the jury room. And then we'll bring you back in here, and I'll charge you on the law.

Now, maybe never more important than right now is the instruction that I have been giving you over and over. You may be very tempted to go look up the meaning of words. You may be tempted to drive by locations that you've heard described. You may be tempted to do a study on some of the matters that you've heard today and received expert testimony on today. You may be craving some input from somebody that you love and trust about matters that you're about to have to decide.

You can't do any of that. You have to restrict your consideration of this case to the evidence and the law that you receive in this courtroom *because we've carefully – well, the law has carefully filtered what you've heard so that only that which is most reliable and trustworthy comes to you.*

When you started the case, you told us you didn't have a bias or prejudice against anybody. We needed to have you start with a blank slate and then only be affected by the evidence that you hear during the case.

If you go out and you talk with somebody or you do any investigation on your own, you're going to mess all that up. And we're going to wind up with a mistrial. Do not do that. Okay?

Instead, if you possibly can, go home and forget about us. Have a good night sleep. . . .

17

(Emphasis supplied.)

OCGA § 17-8-57 (a) (1) provides: "It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." "To violate the statute in this respect, the court's comment [must] pertain to a disputed issue of fact and express an opinion on whether that fact had or had not been proved at trial." *Brown v. State*, 302 Ga. 454, 463 (3) (807 SE2d 369) (2017).

Here, Clemmons failed to object at trial to the trial court's comment, and thus we apply a plain error analysis. See OCGA § 17-8-57 (b) ("[F]ailure to make a timely objection to an alleged violation of [OCGA § 17-8-57 (a) (1)] shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties."); *Bamberg v. State*, 308 Ga. 340, 352 (5) (839 SE2d 640) (2020) (applying plain error test where defendant "failed to object at trial to any of the statements [by the trial court] now complained of").

> To establish plain error, [Clemmons] must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

(Citations and punctuation omitted.) Id.

18

Guided by this framework, we conclude that the trial court did not commit plain error. While Clemmons argues that the above-quoted italicized language was an improper expression of opinion about the evidence, his "argument ignores the context in which the comment was made." (Citation and punctuation omitted.) *Roberts v. State*, 305 Ga. 257, 263 (4) (824 SE2d 326) (2019). By its instruction, the trial court did not express an opinion about Clemmons's guilt or innocence or about what facts had or had not been proved. Rather, the instruction, when read as a whole and in context, was an admonition for jurors to refrain from conducting their own investigation of the case and instead only to consider evidence that had been subjected to and filtered by the rules of evidence. Given the context in which the comment was made, Clemmons cannot show that there was error by the trial court that was clear and obvious beyond reasonable dispute, and therefore cannot establish the second prong of the plain error test. See *Bamberg*, 308 Ga. at 352 (5). See also *Brown v. State*, 302 Ga. 454, 463 (3) (807 SE2d 369) (2017) (concluding that trial court's comment did not violate OCGA § 17-8-57, where "the comment was in the nature of a permissible clarification of procedure"); *Graham v. State*, 337 Ga. App. 193, 199 (3) (786 SE2d 857) (2016) (concluding that trial court's comments did not violate OCGA § 17-8-57, where the "comments . . . were made in the context of

19

telling jurors not to do their own investigation" and did not indicate the court's opinion regarding whether a particular element had been proved by the State).

Additionally, Clemmons cannot meet the third prong of the plain error test because he has not shown that he was harmed. The evidence against Clemmons was strong, particularly in light of the testimony of J. C. and the law enforcement officers' testimony linking him to the cell phone number and email address used in the Backpage.com advertisements. Furthermore, when the jury returned to court the following day after the instruction at issue, the trial court gave its final charge to the jury in which it properly instructed the jurors, among other things, that it was their "responsibility to determine the facts of the case from all of the evidence presented"; that they were to determine the credibility of the witnesses and were not required to accept the testimony of any witness, expert or otherwise; that they were to decide what evidence to believe or not believe; and that they were not to interpret any ruling or comment by the trial court during the trial as being "intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of [Clemmons]." Under these circumstances, even if the trial court's comment had constituted a clear and obvious violation of OCGA § 17-8-54 (which it did not), the comment "had no likelihood of affecting the

outcome of the trial." *Roberts*, 305 Ga. at 264 (4) (concluding that even if the trial court's comments violated OCGA § 17-8-54, the trial court's error was harmless and did not rise to the level of plain error, given the strength of the evidence against the defendant and other instructions given by the court). See *Overton v. State*, 277 Ga. App. 819, 821 (2) (627 SE2d 875) (2006) (trial court's improper comment did not constitute plain error in light of the strength of the evidence against the defendant and the charge of the court viewed in its entirety, which included the instruction that the jury was "not to interpret any comment by [the court] as an expression or intimation of opinion upon what had or had not been proven"). Accordingly, Clemmons has failed to show a violation of OCGA § 17-8-54 that amounted to plain error.

4. Lastly, Clemmons argues that his trial counsel rendered ineffective assistance by failing to object to the trial court's allegedly improper comment on the evidence. However, "we have already explained that the judge's comment caused [Clemmons] no harm, and the test for prejudice in the ineffective assistance analysis is equivalent to the test for harm in plain error review." (Citation and punctuation omitted.) *Roberts*, 305 Ga. at 265 (5) (a). Clemmons therefore cannot succeed on his ineffective assistance claim. See *Carmichael v. State*, 305 Ga. App. 651, 654 (3) (700 SE2d 650) (2010) ("We need not address both the deficiency and prejudice prongs

21

of [the ineffective assistance of counsel] test if the showing on one of the prongs is insufficient.").

*Judgment affirmed. Gobeil and Markle, JJ., concur*.