## S10A0453. SPENCER v. THE STATE.
(696 SE2d 617)

NAHMIAS, Justice.

A Fulton County jury convicted Gary Spencer of felony murder and other crimes arising out of the shooting death of rival drug dealer Kenneth Morrell. Spencer appeals, arguing that the trial court erred in failing to hold a pre-trial *Chandler* hearing, see *Chandler v. State*, 261 Ga. 402 (405 SE2d 669) (1991), and failing to ascertain on the record whether he wanted to testify in his own defense. Spencer also argues that he received ineffective assistance of counsel. For the reasons that follow, we affirm.[1]

---

[1] The crimes occurred on the night of August 30-31, 2006. Spencer was indicted on November 28, 2006, for malice murder, two counts of felony murder, the predicate felonies of aggravated assault with a deadly weapon and possession of a firearm by a convicted felon, and aggravated assault. On June 15, 2007, after a five-day trial, Spencer was acquitted of malice

1. Viewed in the light most favorable to the verdict, the evidence at trial showed the following. Spencer and the victim sold drugs on opposite corners of an intersection in downtown Atlanta. There had been previous altercations between Spencer and Morrell, and shortly before midnight on August 30, 2006, Morrell crossed the street and initiated a conversation with Spencer. The two men began to argue, and Spencer pulled out a gun and fired multiple shots at Morrell before fleeing on foot. Morrell died from multiple gunshot wounds. Several witnesses to the shooting testified at trial.

A police officer found a large wad of cash in small bills and a cell phone in Morrell's pocket. He did not find a gun by the body, but a witness testified that after he heard gunfire, he saw someone approach Morrell's body, empty his pockets of some cash and drugs, pick up a gun that was lying on the ground at his fingertips, and give the gun to an associate of Morrell's across the street.

Spencer was arrested nearby. When taken back to the crime scene, he told officers that he had swallowed a large amount of crack cocaine and wanted to die. Spencer later wrote letters to Monique Boyer asking her not to testify or tell the police anything about his involvement in the shooting.

Spencer does not contend that the evidence was insufficient to support his convictions. Nevertheless, in accordance with this Court's practice in direct appeals of murder cases, we have reviewed the record and we hold that when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. (a) Changing the rule that had previously applied, this Court held in *Chandler* that evidence of a victim's specific violent acts against third parties may be admissible where a defendant claims justification (self-defense). See 261 Ga. at 407. The *Chandler* Court recognized that procedures were needed to govern the introduction of such evidence, requiring advance notice of the defendant's intention to offer such evidence to avoid "unfairness to the state." See id. at 407-408. The Court therefore set forth such procedures on an

murder but convicted of the remaining charges. The trial court merged all the convictions into the first felony murder conviction, except for the firearm charge. The court then sentenced Spencer to life in prison for felony murder plus five years consecutive for the firearm conviction. Spencer filed a motion for new trial on July 16, 2007, which he amended on February 20, 2009. The trial court summarily denied the motion on August 12, 2009, and Spencer filed a timely notice of appeal on September 9, 2009. The case was docketed in this Court for the January 2010 Term and submitted for decision on the briefs.

interim basis, anticipating that "curative procedures to avoid a battle by surprise eventually will be incorporated into the [Uniform Superior Court Rules (USCR)]." Id. at 408. After *Chandler*, USCR 31.1 was amended and USCR 31.6 was enacted to codify the procedures that now govern the admissibility of *Chandler* evidence.[2] Among other things, the defendant has the burden of showing the admissibility of *Chandler* evidence. See USCR 31.6 (B).

> To meet that burden, the defendant must, at a minimum, (1) follow the procedural requirements for introducing the evidence, (2) establish the existence of prior violent acts by competent evidence, and (3) make a prima facie showing of justification.

*Laster v. State*, 268 Ga. 172, 174 (486 SE2d 153) (1997) (footnotes omitted). The trial court's decision to admit or exclude *Chandler* evidence is subject to reversal only for abuse of discretion. See *Jones v. State*, 265 Ga. 138, 141 (454 SE2d 482) (1995).

(b) Spencer claimed self-defense, and pursuant to *Chandler*, he sought to introduce evidence at trial that the victim had robbed several people at gunpoint and had murdered another drug dealer. At a motions hearing about six weeks before trial, the trial court advised that it was unlikely to rule on a *Chandler* motion prior to trial, explaining that such a motion ensures that "everyone is alerted and the district attorney has good information on preparing for trial," but the evidence is not admissible until the three-part test is met.

---

[2] USCR 31.1 provides, in relevant part, that "[n]otices of . . . the intention of the defense to introduce evidence of specific acts of violence by the victim against third persons . . . shall be given and filed at least ten [10] days before trial unless the time is shortened or lengthened by the judge. Such filing shall be in accordance with the following procedures." USCR 31.6 then provides:

(A) The defense may, upon notice filed [in] accordance with Rule 31.1, claim justification and present during the trial of the pending case evidence of relevant specific acts of violence by the victim against third persons.

(B) The notice shall be in writing, served upon the state's counsel, and shall state the act of violence, date, county and the name, address and telephone number of the person for each specific act of violence sought to be introduced. The judge shall hold a hearing at such time as may be appropriate and may receive evidence on any issue of fact necessary to determine the request, out of the presence of the jury. The burden of proving that the evidence of specific acts of violence by the victim should be admitted shall be upon the defendant. The defendant may present during the trial evidence of only those specific acts of violence by the victim specifically approved by the judge.

(C) Notice of the state's intention to introduce evidence in rebuttal of the defendant's evidence of the victim's acts of violence and of the nature of such evidence, together with the name, address and telephone number of any witness to be called for such rebuttal, shall be given defendant's counsel and filed within five days before trial unless the time is shortened or lengthened by the judge.

Spencer served his initial written *Chandler* motion in timely fashion a month before trial, and he supplemented it a week before trial. The trial court declined to hold a pre-trial hearing on the *Chandler* evidence, stating that Spencer had yet to make a "prima facie case," to which ruling defense counsel twice responded "Okay."

On the first day of trial, defense counsel asked what he could say about the *Chandler* evidence in his opening statement, and the trial court responded, "Nothing." Defense counsel then offered to have the defendant testify to establish the prima facie case, but the trial court declined, explaining that Spencer's testimony would not suffice because he could not promise to testify later before the jury. Defense counsel responded, "I agree."

Shortly before the State rested, the trial court raised the *Chandler* issue outside the jury's presence. The trial court went over each item listed in Spencer's *Chandler* motion, ruling evidence of several prior acts of violence by the victim against third parties admissible and excluding others, while reserving a ruling on the issue of the victim's alleged involvement in a murder. The defense then began presenting its case. When it came time for evidence about the prior murder to be introduced, the trial court sent the jury out again and heard testimony from a police detective who had investigated the murder case. The trial court ruled that the evidence of the victim's involvement was unreliable hearsay, so the detective was not permitted to testify before the jury.

(c) On appeal, Spencer contends that the trial court committed reversible error by failing to hold a *Chandler* hearing before trial. However, Spencer did not clearly object to the trial court's decision not to hold the *Chandler* hearing before trial. Instead, defense counsel responded "Okay" and "I agree" to the court's rulings. Spencer therefore cannot complain about those rulings on appeal. See *Earnest v. State*, 262 Ga. 494, 496 (422 SE2d 188) (1992) ("'Acquiescence completely deprives (appellant) of the right to complain further.'" (citation omitted)).

In any event, Spencer's contention lacks merit. As did *Chandler*, see 261 Ga. at 408, USCR 31.1 and 31.6 require detailed pre-trial *notice* of the defendant's intention to present *Chandler* evidence (and of the State's intention to offer any rebuttal evidence), in order to prevent trial by ambush. *Chandler* did not require, however, that the trial court hold a hearing on the issue before trial begins. USCR 31.6 (B) requires the trial court to conduct a hearing on *Chandler* evidence outside the jury's presence, during which the judge "may receive evidence on any issue of fact necessary to determine the request." But the rule expressly leaves the timing of that hearing to the discretion of the court, stating that "[t]he judge shall hold a hearing *at such time as may be appropriate*" (emphasis supplied).

Pre-trial *Chandler* hearings may be common, see, e.g., *Peterson v. State*, 274 Ga. 165, 167 (549 SE2d 387) (2001); *Laster*, 268 Ga. 172, but they are not universal, see *Stobbart v. State*, 272 Ga. 608, 610 (533 SE2d 379) (2000). A pre-trial ruling on proposed *Chandler* evidence may assist the parties and the court in framing the issues to be tried, if the supporting evidence is defined and its admissibility can be determined at that point. But Spencer has identified nothing in the rules or our cases that requires *Chandler* hearings to be held before trial in every case. Having reviewed the record in this case, we find no abuse of discretion in the trial court's decision as to when to hear and rule on the proposed *Chandler* evidence, most of which was then admitted, allowing Spencer to present his defense, and the remainder properly excluded as unreliable hearsay.

3. Near the end of the State's case-in-chief, the trial court advised Spencer, on the record, that the decision to testify was his alone and that he should consult with his counsel before making his decision. At defense counsel's request, Spencer was given overnight access to his attorneys to confer about the decision. Spencer then did not testify at trial. During the motion for new trial hearing, defense counsel confirmed that the right to testify had been explained to Spencer and he had decided not to testify.

Spencer now contends that the trial court erred because it did not secure an on-the-record decision from Spencer as to whether he wanted to testify, nor did the court explain to him the consequences of deciding not to testify. He contends that such on-the-record actions by the trial court are required to ensure that a defendant's waiver of the right to testify is knowing and voluntary and that, at a minimum, defense counsel should place on the record a statement of the fact that the defendant has been fully informed of the consequences of not testifying.

Under Georgia law, however, the trial court had no duty to ascertain on the record whether Spencer wanted to testify or to advise him regarding the consequences of his decision. We have said that it is the "better practice" for trial courts routinely to inquire whether a non-testifying defendant desires to waive his right to testify, in order to avoid the type of post-conviction challenge that Spencer raises. *Barron v. State*, 264 Ga. 865, 865, n. 2 (452 SE2d 504) (1995). But we have declined to mandate that trial courts engage in an on-the-record colloquy with criminal defendants about their decision not to testify. See id. at 865 & n. 2.

Requiring trial courts to inject themselves into the discussions between non-testifying defendants and their counsel about whether or not to take the stand would be inappropriate. "In Georgia, whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with

his trial counsel and there is no general requirement that a trial court interject itself into that decision-making process." *Burton v. State*, 263 Ga. 725, 728 (438 SE2d 83) (1994). Similarly, while a trial court may obtain a statement on the record that defense counsel has discussed the decision whether to testify with the defendant, such a statement is not required, particularly because any such statement must be elicited carefully so as not to disclose any privileged content of such discussions.

4. Spencer contends that his trial counsel were constitutionally ineffective in two respects. See generally *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) (establishing the standards for reviewing claims of ineffective assistance of counsel in violation of the Sixth Amendment).

Spencer points first to the conflicting advice he received from his three lawyers about whether he should testify, asserting that a defendant is entitled to unified advice from counsel. All three of Spencer's lawyers had substantial experience in criminal defense practice. Whether Spencer should testify was an issue they discussed with him from the beginning of the representation, and, as noted previously, the trial court gave Spencer an overnight recess to consult further with counsel before making his final decision. Two of his attorneys thought it was good strategy for Spencer not to testify; his lead attorney disagreed. They presented their advice to Spencer, and he then made the decision not to testify, which was ultimately his decision and not theirs to make. See *Davenport v. State*, 283 Ga. 171, 174 (656 SE2d 844) (2008). Spencer was fortunate to have not one but three experienced lawyers to advise him, and their advice did not in any way violate his Sixth Amendment right. The record shows both that counsel's performance was not professionally deficient and that Spencer has shown no prejudice from their performance. See *Strickland*, 466 U. S. at 687-688.

Spencer also points to his counsels' decision not to object and move for a mistrial based on the following portion of the prosecutor's closing argument:

> This is your community and these are your streets, and you can say yes to this or you can say no to this. You are today something that you may never be again and something that most of you have never been before. You are the most powerful body in American law. You're it. This is your call. Say no to this on behalf of our community. Find the defendant guilty as charged based on the evidence.

However, Spencer's lead counsel explained at the motion for new trial hearing that his "general rule" is not to object during closing

argument unless opposing counsel says "really something extremely over the top," to avoid getting objections during his own closing argument. Lead counsel felt that the prosecutor's argument in this case did not rise to that level. Lead counsel's decision on this point cannot be deemed unreasonable, given that statements akin to the ones the prosecutor made in this case have been held to be within the bounds of permissible argument. See, e.g., *Gibson v. State*, 283 Ga. 377, 381 (659 SE2d 372) (2008) (finding it appropriate for prosecutors to urge the jury to speak on behalf of the community and rid it of robbers and murderers); *Laney v. State*, 271 Ga. 194, 198 (515 SE2d 610) (1999) (finding statement "this is your community" acceptable); *Philmore v. State*, 263 Ga. 67, 69 (428 SE2d 329) (1993) (finding it appropriate for the prosecutor to urge the jury to convict for the safety of the community). See also *McClain v. State*, 267 Ga. 378, 385 (477 SE2d 814) (1996) ("A prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished."). Thus, Spencer has failed to establish that his counsel's performance was professionally deficient in this respect.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellee.

