A11A2319. GAUTREAUX v. THE STATE.
(722 SE2d 915)

BARNES, Presiding Judge.

A jury convicted Carolina Gautreaux of felony theft by taking, and she was sentenced to serve ten years in confinement, followed by five years on probation. She appeals, contending that the State failed to prove venue and that the trial court erred in not allowing her to cross-examine the victim about his efforts to reduce his tax liability. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. *Brown v. State*, 293 Ga. App. 633 (667 SE2d 899) (2008). We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. Id. We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that Gautreaux began working for Cammon Steel as a bookkeeper in 2001. When she first began working for the company, it had no system to keep track of the accounts receivable or payable, and its checkbooks had never been balanced, so Gautreaux set up an accounting program and began to handle the corporate finances. After the president had a heart attack in 2003, he obtained a stamp of the corporate secretary's signature for Gautreaux to use on company checks. Eventually, Gautreaux was "in total control of all

[the company's] financials, total," and was the only person with administrative access to the payroll information. She handled all the bills and was also the only person who reviewed the corporate bank statements. She kept the president informed about the company's cash flow by preparing a weekly handwritten report that showed the total amount of outstanding accounts receivable, accounts payable, and cash in the bank.

In 2008, Gautreaux told the president that she "didn't feel comfortable" with the small amount of cash the company had in its operating account because it had many outstanding accounts receivable and a number of accounts payable that were coming due. The president knew that many of his customers could not pay their bills until they were paid, which was typically two to three months, so he opened a $50,000 line of credit for the company operating account, anticipating that any loan money used would soon be repaid.

Gautreaux was diagnosed with fibromyalgia and in 2008 began working from home. Her husband, who also worked for Cammon Steel, brought her paperwork back and forth to the office, but Gautreaux had difficulty completing all her tasks, and the president began to reassign some of Gautreaux's duties to other employees. He eventually reassigned most of her duties and cut Gautreaux's salary in half, after which she sent a note to all of the company's employees apologizing that she could not get their paychecks to them on time because she did not have enough hours. The company president "got real upset" at what he described as her unprofessional conduct and took away her check-writing privileges. He began reviewing the company bank statements and saw a check to Gautreaux for $6,409, which he could not account for, so he asked Gautreaux's husband about it. The husband said he did not know anything about the check, but returned the next day promising to repay the money, which he did shortly afterward.

The president discovered that the $6,409 check was not listed in the computerized check register, and discovered that it was possible to enter information into the program, generate and print a check, and then cancel or void that check in the register, leaving the check number available to be reassigned to another check. It was also possible to delete the check from the registry, or change the amount listed in the registry to a different amount. The president ordered an audit and found several questionable checks, but because Gautreaux had shredded all the checks that had been returned with the statements, the company had difficulty completing a thorough audit. A review uncovered a number of unauthorized checks to Gautreaux, including one for $15,000, twelve for $1,501.49, and numerous payroll checks to Gautreaux that had been entered into the computer register for one amount but actually written for a greater amount.

An expert in questionable documents from the Georgia Bureau of Investigation Crime Laboratory testified that he compared the endorsements on 14 checks to known samples of handwriting from Gautreaux, her husband, the president, and the corporate secretary, and concluded that one was definitely endorsed by Gautreaux. He could not definitively conclude that she had endorsed the other checks, because of the quality of the copies, but testified that those endorsements had characteristics that corresponded with Gautreaux's handwriting.

Gautreaux testified that the extra money was payment for extra work she did for the president, but the check register did not reflect the correct sum because the president did not want the corporate secretary to know he was paying Gautreaux extra money. She also testified that a $15,000 check was a loan to buy property for her mother to live on, that a $1,500 check was a loan, and that the president authorized her to pay her mother's hospital bill from the corporate account, which was another loan. She repaid the $6,409 because she was scared the president would put her in jail, but testified she knew nothing about that check, hypothesizing that another employee must have deposited it into Gautreaux's bank account after obtaining her account number from previous deposits.

1. Gautreaux contends that the State failed to prove venue, and that the trial court therefore erred in denying her motion for a directed verdict.

> Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt. Proof of venue is a part of the State's case, and the State's failure to prove venue beyond a reasonable doubt renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal.

(Citation and punctuation omitted.) *Bell v. State*, 284 Ga. 790, 792 (1) (671 SE2d 815) (2009). Gautreaux was indicted for two counts of theft by taking an amount exceeding $500, the property of Cammon Steel, in Troup County, while she was a fiduciary, in breach of her fiduciary obligation. The first count accused her of taking the money between June 29, 2005 and June 29, 2007, and the second accused her of taking the money between June 30, 2007 and December 8, 2008. The jury acquitted Gautreaux of the first count and convicted her of the second, and Gautreaux argues that the State failed to establish that she received any stolen money in Troup County from June 30, 2007 through December 8, 2008.

OCGA § 16-8-2 provides that "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property[.]"

> In the trial of a theft by taking case, the crime shall be considered as having been committed in any county in which the accused exercised control over the property which was the subject of the theft, OCGA § 16-8-11, and the State bears the burden of proving that the defendant exercised control over the property taken in the county where the case was prosecuted.

(Citation and punctuation omitted.) *Williams v. State*, 297 Ga. App. 150, 151 (2) (676 SE2d 805) (2009). In a prosecution for theft by taking checks in one county and depositing them into a bank account in another county, venue is proper in either county. See *Hawkins v. State*, 167 Ga. App. 143, 147-148 (5) (305 SE2d 797) (1983).

In this case, the company president testified that Cammon Steel was located in Troup County, and that Gautreaux worked at the company office from 2001 until some time in 2008, when she began working from home. The State established that Gautreaux wrote 13 checks at the Troup County office between June 30, 2007 and January 1, 2008, in which the amount of the check cashed exceeded the amount entered into the computer register, and the total amount of the difference was more than $500. This evidence was sufficient to establish venue beyond a reasonable doubt and to sustain Gautreaux's conviction for theft by taking.

2. Gautreaux asserts that the trial court erred by sustaining the State's objection to her cross-examination of the company president regarding his efforts to reduce his tax liability. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Spencer v. State*, 287 Ga. 434, 436 (2) (a) (696 SE2d 617) (2010).

Gautreaux argues that the excluded evidence would have established the res gestae surrounding her actions, and that questioning the president about his bad acts and intent to evade taxes would have helped her establish that she was not stealing from him but was being rewarded for helping him minimize his tax liability. We disagree.

First, Gautreaux never testified that she was being rewarded for helping the president minimize his tax liability, only that she was being paid bonuses for additional work, some of it personal, and that the register numbers were different because the president did not want the secretary to know about the extra pay. When asked what kind of personal things she did for this extra money, she said she

brought cash to the president's son, told the son about the death of his mother, and acted as a bill collector. She never said that the president paid her extra money because she helped him minimize his taxes. Second, some of the questions to which the State objected related to tax advice the president received from his accounting firm, which would have shed no light on Gautreaux's actions. Based on our review of the trial transcript, we find no abuse of discretion in the trial court's evidentiary rulings.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED FEBRUARY 13, 2012.

*Jamie T. Roberts*, for appellant.
*Peter J. Skandalakis, District Attorney, Lee F. Tittsworth, Assistant District Attorney*, for appellee.