**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 30, 2013**

# In the Court of Appeals of Georgia

A13A0294. ERICK v. THE STATE.

BARNES, Presiding Judge.

Following a bench trial, the trial court found Phillip Moore Erick guilty of theft by taking based on evidence that he had misappropriated $20,000 owed to his employer. On appeal, Erick maintains that there was insufficient evidence that venue was proper in Gwinnett County. For the reasons discussed below, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict[.]" *Vadde v. State*, 296 Ga. App. 405 (674 SE2d 323) (2009). So viewed, the evidence shows that Erick worked for D&S Glass Incorporated as a project manager who bid on glass-installation jobs on behalf of the company. However, during the summer of 2007, while he continued to work for D&S Glass, Erick decided that he wanted to start his own glass installation company.

In June 2007, Erick negotiated a contract for glass windows to be installed during the construction of a new home in Fulton County for a total price of $39,644, which included a $20,000 deposit. According to the homeowner, Erick held himself out as representing D&S Glass during the negotiations. In negotiating the contract, Erick also had the homeowner come to the Cobb County business location of D&S Glass to view different types of glass for possible installation and to meet with several representatives of the company.

The homeowner ultimately agreed to Erick's proposal with the understanding that D&S Glass would be performing the glass installation work. At the homeowner's direction, the general contractor overseeing the construction of the home finalized the documentation for the glass installation and paid the $20,000 deposit, and the homeowner reimbursed the contractor.

The general contractor had not been involved in the negotiations between the homeowner and Erick over the glass installation, had not gone with the homeowner to view different types of glass at the business location of D&S Glass, and was unaware that Erick had held himself out to the homeowner as representing D&S Glass. On June 29, 2007, Erick had the general contractor sign a work proposal for the $39,644 glass installation that listed "Erick's Glass, Co." as the installer of the

windows rather than D&S Glass, and he had the general contractor name "Erick's Glass" as the payee on the $20,000 deposit check issued by the contractor.

Neither the signed work proposal nor the $20,000 deposit were provided by Erick to D&S Glass. Instead, Erick later provided the owners of D&S Glass with a work proposal for the glass installation that listed the total installation price as only $17,200.

Over the course of the summer, D&S Glass workers using glass and other materials ordered from that company began installation of the windows at the home under the direction of Erick. Erick continued to receive a salary from D&S Glass during this period.

Ultimately, however, very little progress was made in the installation of the windows. By the end of the summer, the homeowner and general contractor had become frustrated because only a small percentage of the windows had been installed, and the windows that had been installed repeatedly failed the quality control tests performed by the general contractor. In September 2007, the homeowner and general contractor met with Erick to discuss the installation problems. The meeting was held in the garage of the house under construction. During the meeting, Erick admitted that he had taken the $20,000 deposit check and used it to start his own glass company,

"Erick's Glass." According to Erick, he had used the deposit to purchase a truck and a trailer for his new business rather than to pay D&S Glass for labor and materials. Because Erick had used the $20,000 for his starting his own company, only 20 percent of the glass installation work had been completed by that point, and there were insufficient materials on-site for completion of the job.

After Erick made these disclosures, one of the owners of D&S Glass was contacted, and he came to the garage, where he was informed of what Erick had done. Erick never returned to D&S Glass after the meeting and would not answer phone calls to him from the company's owners. D&S Glass subsequently attempted to correct the installation problems and finish the installation of the glass at the home, but the homeowner ultimately had all of the windows that had been installed on the sides and back of the house removed and hired another company to complete the installation work. In the end, D&S received only $2,000 for the glass installation work it performed at the house.

The owners of D&S Glass contacted the police in Cobb County to report Erick's misappropriation of the $20,000 because that was the county where the company was located. However, Cobb County transferred the case to Gwinnett County after learning that the $20,000 check had been deposited into an account

4

associated with Erik via an automatic teller machine ("ATM") located in the latter county. After he was indicted in Gwinnett County for theft by taking based on misappropriating the $20,000 owed to D&S Glass, Erick elected to have his case tried in a bench trial.

At the bench trial, the homeowner, the general contractor, the two owners of D&S Glass, and the Cobb County police investigator testified to the events as set out above. To establish venue, the State called a banking center manager from Bank of America as a witness, through whom bank business records were introduced into evidence. Business records for the bank reflected that the $20,000 check issued by the general contractor to "Erick's Glass" had been endorsed for deposit only and had been deposited into a business account with Bank of America via a drive-up ATM located in Gwinnett County on June 29, 2007, the same day that the check had been provided to Erick. The business account was under the name of Erick's wife d/b/a "Erick's Glass Consultants." The address listed on the account for "Erick's Glass Consultants" was in Walton County and was the same address that had been listed for "Erick's Glass, Co." on the work proposal that Erik had the general contractor sign. The banking center manager was unable to identify from the business records the specific person who had made the deposit into the business account. The recordings

5

from the surveillance camera at the ATM were no longer in existence for the date at issue.

Erick elected not to testify and presented no witnesses on his behalf. After hearing all of the evidence, the trial court denied Erick's motion for a directed verdict of acquittal and subsequently found him guilty of theft by taking. Erick moved for a new trial, contending that there had been insufficient evidence to prove that venue was proper in Gwinnett County. The trial court disagreed and denied the motion. Erick later moved for permission to file an out-of-time appeal, the trial court granted the motion, and this appeal followed.

On appeal, Erick contends that the State failed to prove that venue was proper in Gwinnett County, and, therefore, that the trial court erred in denying his motion for a directed verdict of acquittal. Erick asserts that the State failed to prove that he was the person who deposited the $20,000 check into the ATM in Gwinnett County and thus failed to establish that he ever exercised control over the money in that county. We are unpersuaded.

"Venue is a jurisdictional fact[] and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt." (Citations and

punctuation omitted.) *Bell v. State*, 284 Ga. 790, 792 (1) (671 SE2d 815) (2009).

Venue can be proven through direct or circumstantial evidence. *Williams v. State*, 297

Ga. App. 150, 151 (2) (676 SE2d 805) (2009). The question of venue is normally for

the trier of fact, and the fact finder's decision will not be set aside if there is any

evidence to support it. *Jones v. State*, 245 Ga. 592, 596 (2) (266 SE2d 201) (1980).

Under Georgia law, "[a] person commits the offense of theft by taking when

he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates

any property of another with the intention of depriving him of the property[.]" OCGA

§ 16-8-2. In a theft by taking case, "the crime shall be considered as having been

committed in any county in which the accused exercised control over the property

which was the subject of the theft." OCGA § 16-8-11. Consequently, "the State bears

the burden of proving that the defendant exercised control over the property taken in

the county where the case was prosecuted." *Williams*, 297 Ga. App. at 151 (2).

Notably, "[i]n a prosecution for theft by taking checks in one county and

depositing them into a bank account in another county, venue is proper in either

county." *Gautreaux v. State*, 314 Ga. App. 103, 106 (1) (722 SE2d 915) (2012). See

*Bearden v. State*, 316 Ga. App. 721, 724 (2) (728 SE2d 874) (2012) (noting that "in

the prosecution of theft by taking, venue is proper in the county where the checks

7

were taken or deposited"). Additionally, venue is proper in the county where a defendant's agent exercised control over the property. See *Queen v. State*, 210 Ga. App. 588, 589 (1) (436 SE2d 714) (1993), superceded in part by statute on other grounds as stated in *Callaham v. State*, 317 Ga. App. 513, 519 (2) (b) (732 SE2d 88 (2012); See also *DeVine v. State*, 229 Ga. App. 346, 347 (1) (494 SE2d 87) (1997) (noting that the "receipt of the funds by an agent of the defendant designated for that purpose [is] sufficient to establish venue").

Here, there was evidence that the $20,000 check at issue was deposited into a Bank of America ATM in Gwinnett County on the same day that Erick had been provided the check by the general contractor. And while the State did not present direct evidence that Erick deposited the check, there was circumstantial evidence from which the trial court was entitled to infer that the deposit had been made by Erick or someone acting on his behalf. Specifically, the $20,000 check was deposited into a business account for Erick's wife d/b/a "Erick's Glass Consultants," and Erick had identified his new glass installation company to the homeowner and general contractor at the September 2007 meeting as "Erick's Glass." Moreover, Erick had convinced the general contractor to sign a work proposal for the glass installation that listed "Erick's Glass, Co." as the installer rather than D&S Glass, and he had

8

persuaded the general contractor to name "Erick's Glass" as the payee on the $20,000 deposit check. Furthermore, Erick admitted to the homeowner and general contractor at the September 2007 meeting that he had used the $20,000 to buy a truck and trailer for his new glass installation company.

In light of this combined circumstantial evidence, the trial court was authorized to find that Erick or someone acting on his behalf exercised control over the $20,000 check in Gwinnett County by depositing the check into an ATM there.[1] Accordingly, the trial court committed no error in finding that venue was proper in Gwinnett County and in denying Erick's motion for a directed verdict of acquittal on that ground. See *Bearden*, 316 Ga. App. at 724 (2); *Gautreaux*, 314 Ga. App. at 106 (1); *DeVine*, 229 Ga. App. at 347 (1); *Queen*, 210 Ga. App. at 589 (1).

*Judgment affirmed. Miller and Ray, JJ., concur.*

---

[1] Erick contends that the State failed to present competent evidence that an ATM debit card had been issued to him for the business account or that he had signed a signature card for the account at or around the time of the $20,000 deposit. But irrespective of whether the State presented competent evidence regarding an ATM debit card or a signature card, there was other circumstantial evidence that sufficiently linked Erick to the bank account, as discussed above.