**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 26, 2018**

# In the Court of Appeals of Georgia

A17A1554. FRYE v. THE STATE.

DILLARD, Chief Judge.

Following a trial by jury, Jeremy David Frye was convicted of child molestation and aggravated sexual battery of his minor granddaughter, Co. D. Frye now appeals from the convictions, arguing that the trial court erred in excluding certain testimony under Georgia's Rape Shield statute. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reflects that Frye's granddaughters, Ca. D. and Co. D. (who are cousins born five years apart), would occasionally spend the night at their grandparents' house. Ca. D. alleged that when she was six years old and stayed at her grandparents' house, Frye would come

---

[1] *See, e.g.*, *Sowell v. State*, 327 Ga. App. 532, 534 (759 SE2d 602) (2014).

into the room where she slept and touch her breasts and genital area under her clothes while she pretended to sleep. Likewise, Co. D. alleged that when she was approximately eight to ten years old, Frye touched her breasts and vagina, sometimes inserting his finger into her vagina, all while she too pretended to sleep.

According to Co. D., in addition to touching her inappropriately, Frye also took Polaroid photographs of her when she got out of the shower, and he kept the pictures in a little box under the seat of his work truck so that he could look at them during the day. Co. D. testified that Frye told her that she would "look stupid" if she ever told anyone about what he had done and that he used to tell sexual jokes in her presence. Additionally, when Frye was alone with Co. D. on one occasion, he spoke to her about "sex toys and how you use them."[2]

Neither Ca. D. nor Co. D. immediately told anyone about Frye's acts of sexual abuse; however, at some point, they confided in each other. Then, in 2012 (when she was approximately ten years old), Ca. D. also confided in a friend and, thereafter, she

---

[2] Co. D. testified that she "knew where the conversation was going" and therefore recorded it with her cell phone and sent it to her mother via text message, though it no longer existed at trial. She explained that "at least a year" passed between the time she sent this recording and when she told her mother about the allegations of abuse.

also told her mother. At that point, Co. D., who was 14 years old, also told her parents when they confronted her after learning about Ca. D.'s disclosure. The girls' parents then notified law enforcement, and an investigation ensued.

Frye was subsequently indicted on two counts of child molestation as to Ca. D., one count of aggravated sexual battery as to Co. D., and one count of child molestation as to Co. D. The jury acquitted Frye on the charges of child molestation as to Ca. D., but found him guilty on the charges of aggravated sexual battery and child molestation against Co. D. This appeal follows the trial court's denial of Frye's motion for new trial.

When a criminal conviction is appealed, the defendant no longer enjoys a presumption of innocence.[3] And the relevant question is whether, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[4] As a result, we do not weigh the evidence or determine witness credibility, and the jury's

_____

[3] *Arbegast v. State*, 332 Ga. App. 414, 415 (1) (773 SE2d 283) (2015); *Westbrooks v. State*, 309 Ga. App. 398, 399 (1) (710 SE2d 594) (2011).

[4] *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.[5]

With these guiding principles in mind, we turn now to Frye's sole enumeration of error, which is that the trial court committed reversible error by determining that certain proposed testimony was inadmissible because it would violate OCGA § 24-4-412—*i.e.*, Georgia's Rape Shield statute.[6] We disagree.[7]

---

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001); *Westbrooks*, 309 Ga. App. at 399-400 (1). Although Frye does not challenge the sufficiency of the evidence on appeal, we nevertheless find the evidence sufficient to enable a rational trier of fact to find Frye guilty of all the crimes for which he was convicted beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319 (III) (B).

[6] Frye was tried in August 2016, making our new Evidence Code applicable. *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[7] *See, e.g.*, *Spencer v. State*, 287 Ga. 434, 436 (2) (a) (696 SE2d 617) (2010) (noting that we review a trial court's decision on the admission or exclusion of evidence for an abuse of discretion); *Gautreaux v. State*, 314 Ga. App. 103, 106 (2) (722 SE2d 915) (2012) (same).

4

In interpreting OCGA § 24-4-412, we do so according to its terms, giving the words contained in the statute their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage.[8] Put another way, when we consider the meaning of a statute, we must (1) "presume that the General Assembly meant what it said and said what it meant,"[9] and (2) "read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would."[10] As our Supreme Court recently explained,

> [i]n our search for the meaning of a particular statutory provision, we
> look not only to the words of that provision, but we consider its legal

---

[8] *See State v. Mussman*, 289 Ga. 586, 588 (1) (713 SE2d 822) (2011) (punctuation omitted); *see also Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013) ("[A]s with any question of statutory interpretation, we necessarily begin our analysis with familiar and binding canons of construction. Indeed, in considering the meaning of a statute, our charge as an appellate court is to 'presume that the General Assembly meant what it said and said what it meant.' And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, and read the text 'in its most natural and reasonable way, as an ordinary speaker of the English language would.' In sum, where the language of a statute is plain and susceptible of only one natural and reasonable construction, 'courts must construe the statute accordingly.'" (citations and punctuation omitted)).

[9] *Fed. Dep. Ins. Corp. v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014) (punctuation omitted); *see also Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[10] *Loudermilk*, 295 Ga. at 588 (2) (punctuation omitted); *see also Deal*, 294 Ga. at 172.

5

context as well. After all, context is a primary determinant of meaning. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question.[11]

---

[11] *Loudermilk*, 295 Ga. at 588 (2) (punctuation omitted); *accord May v. State*, 295 Ga. 388, 391-92 (761 SE2d 38) (2014).

Thus, when we speak of discerning "the intent of the legislature"[12] (inadvisable as it may be to do so[13]), we are referring to interpreting the relevant statutory text within its contextual backdrop.[14]

And here, we are called upon to interpret Georgia's revised Rape Shield statute, which contains only minimal changes and left the former version of the statute largely untouched."[15] Indeed, like former OCGA § 24-2-3 (a) of our old Evidence Code,

---

[12] *Mussman*, 289 Ga. at 588 (1) (punctuation omitted).

[13] *See Malphurs v. State*, 336 Ga. App. 867, 871 (785 SE2d 414) (2016) ("But that is not how legislative intent or laws work. The General Assembly does not enact a general intention; it enacts statutes. Statutes have words, and words have meanings. It is those meanings that we interpret and apply, not some amorphous general intention."); *Day v. Floyd Cty. Bd. of Educ.*, 333 Ga. App. 144, 150-51 (775 SE2d 622) (2015) (Dillard, J., concurring) (rejecting majority's reliance on legislative history, and noting "I do not consider extratextual sources . . . in interpreting statutes . . . [and] categorically reject relying on legislative history in interpreting the statutes passed by our General Assembly . . . . As Georgians (and Americans), we are 'governed by laws, not by the intentions of legislators.' And as judges, we should only be concerned with what laws actually say, 'not by what the people who drafted the laws intended.' (footnotes omitted)). *See generally BellSouth Telecommunications, LLC v. Cobb County*, __ Ga. App. __ (802 SE2d 686, 695-97) (2017) (Dillard, P.J., concurring) (outlining reasons for generally disfavoring any discussion of "legislative intent" in the context of statutory interpretation).

[14] *See Loudermilk*, 295 Ga. at 588 (2) (looking to statutory text and context); *May*, 295 Ga. at 391-92 (same); *Martinez*, 325 Ga. App. at 273 (same).

[15] *Algren v. State*, 330 Ga. App. 1, 7 (3) (764 SE2d 611) (2014); *see also* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE p. 201-02 (5th

7

OCGA § 24-4-412 (a) of the new Evidence Code provides that in prosecutions for rape, aggravated assault with the intent to rape, aggravated sodomy or sodomy, statutory rape, aggravated child molestation or child molestation, incest, sexual battery, or aggravated sexual battery, "evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section." OCGA § 24-4-412 (a) also provides that "evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards."[16]

---

ed. 2016). *See generally* former OCGA § 24-2-3 (2011).

[16] *Compare* OCGA § 24-4-412 (a), *with* former OCGA § 24-2-3 (a) ("In any prosecution for . . . rape; . . . aggravated sodomy; . . . aggravated child molestation; . . . aggravated sexual battery, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards."). The Federal Rules of Evidence also contain a "rape shield" law. *See* FED. RULE OF EVID. R. 412; *United States v. Saras*, 575 F3d 1191, 1214 (II) (C) (11th Cir. 2009) (referring to Federal Rule of Evidence 412 as "the federal rape-shield law"). But OCGA § 24-4-412 does not track the language of Federal Rule 412. *Compare* OCGA § 24-4-412 (a) (see text *supra*);

The Supreme Court of Georgia has explained that, "to the extent that the new Georgia evidence rules deviate from the old Evidence Code and borrow from the text of the federal evidence rules . . . , we look for guidance to the decisions of the federal appellate courts, particularly the United States Supreme Court and the Eleventh Circuit, interpreting the federal rules in question."[17] But the Rape Shield law in the old and new Evidence Codes are nearly identical, and the Supreme Court of Georgia has made clear that there are "provisions of the new Evidence Code [that] were carried over from our old Evidence Code, and when courts consider the meaning of

OCGA § 24-4-412 (b) ("In any prosecution for [specified sex offenses], evidence relating to the past sexual behavior of the complaining witness may be introduced if the court . . . finds that the past sexual behavior directly involved the participation of the accused and finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution."), *with* FED. RULE OF EVID. R. 412 (a) ("(a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition."); FED. RULE OF EVID. R. 412 (b) ("(b) Exceptions. (1) Criminal Cases. The court may admit the following evidence in a criminal case: (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence; (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and (C) evidence whose exclusion would violate the defendant's constitutional rights.").

[17] *Davis v. State*, 299 Ga. 180, 185 (2) (a) (2) (787 SE2d 221) (2016).

*those* provisions, they may rely on Georgia decisions under the old Code."[18] To that end, as now-Justice Peterson recently explained in a case decided under the new Evidence Code, there is an exception to the Rape Shield law in that "such evidence may be admissible to show the victim's lack of credibility [when] the victim has made prior false allegations of child molestation."[19] Indeed, as our Supreme Court explained when it adopted this exception under the old Evidence Code in *Smith v. State*,[20] "prior false allegations by the victim" do not involve the victim's past sexual conduct, but instead concern "the victim's propensity to make false statements regarding sexual misconduct."[21]

---

[18] *State v. Frost*, 297 Ga. 296, 299 (773 SE2d 700) (2015) (emphasis supplied); *see also Bradshaw v. State*, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015).

[19] *Morgan v. State*, 337 Ga. App. 29, 31 (1) (785 SE2d 667) (2016) (Peterson, J.), *cert. denied* (Ga. Nov. 7, 2016); *see also Sutton v. State*, 336 Ga. App. 884, 885 (1) (785 SE2d 421) (2016) (Peterson, J.) (discussing former OCGA § 24-2-3 and the applicability of this exception).

[20] 259 Ga. 135 (377 SE2d 158) (1989).

[21] *Id.* at 137 (1); *accord Morgan*, 337 Ga. App. at 31 (1); *see also Benton v. State*, 265 Ga. 648, 649 (5) n.5 (461 SE2d 202) (1995) (citing to former OCGA § 24-2-3 and *Smith*, 259 Ga. 125, to note that "[t]he rape-shield law . . . does not necessarily prohibit" testimony regarding "prior accusations of sexual misconduct directed against persons other than the defendant").

The State suggests that the common-law exception from *Smith* no longer applies or controls in the face of our new Evidence Code and its inclusion of OCGA § 24-6-608.[22] But, nevertheless, the State argues that the probative value of Frye's proposed evidence was substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.[23] We will not, however, assess the admissibility of the proposed evidence under OCGA § 24-6-608[24] because Frye neither argued before the trial court nor this Court that the evidence was admissible

---

[22] *See* OCGA § 24-6-608 (b) (providing that, in the trial court's discretion, evidence of specific instances of conduct, "if probative of truthfulness or untruthfulness, [may] be inquired into on cross-examination of the witness: (1) [c]oncerning the witness's character for truthfulness or untruthfulness; or (2) [c]oncerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified").

[23] *See* OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); *United States v. Frederick*, 683 F3d 913, 919 (I) (A) (8th Cir. 2012) (holding that the probative value of cross-examination of victims of defendant's alleged sexual abuse about prior allegedly false accusations of sexual abuse against third parties was substantially outweighed by danger of unfair prejudice from jury confusion and mini-trials concerning allegations unrelated to defendant's case).

[24] *See Douglas v. State*, 340 Ga. App. 168, 173 (2) n.13 (796 SE2d 893) (2017), *citing* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE, p. 327 (4th ed. 2016) ("Prior false allegations of sexual misconduct are considered in federal and state courts under Rule 608 (b).").

11

under that statute. Instead, Frye has only ever maintained that the evidence he sought to admit fell under the common-law exception to the Rape Shield law, and there is no "wrong for any reason" doctrine.[25] In any event, regardless of whether or not the common-law rule of *Smith* remains good law,[26] Frye's evidence did not comport with the common-law exception, rendering the trial court's ruling entirely appropriate.

Prior to trial, Frye filed a motion seeking the admission of testimony regarding a separate, independent investigation into child-molestation allegations by Co. D. against a man other than himself. Specifically, he argued that Co. D. made false allegations against the other man and, thus, that evidence of those allegations should be admissible at Frye's trial as an exception to the Rape Shield law. But during pretrial arguments on the motion, Frye admitted that he sought to use evidence that was "a little bit outside the traditional scope" of the Rape Shield exception in that Co. D. initially denied having *any* sexual contact with the other man, then later said that

---

[25] *See Moore v. State*, 290 Ga. 805, 808 (2) n.3 (725 SE2d 290) (2012) ("There is no 'wrong for any reason' doctrine, and this Court will not reverse a judgment on an issue never raised or ruled on in the trial court or enumerated by the Appellant on appeal . . . .").

[26] To that end, we need not revisit the propriety of our application of the rule in *Morgan*, a case upon which the Supreme Court declined to grant a petition for writ of certiorari. *See supra* note 19.

12

contact was limited to him giving her a hickey on the neck,[27] even though a friend claimed to have witnessed Co. D. engaging in sexual intercourse with the man. Thus, Frye argued that Co. D. was untruthful in the other investigation when she claimed that "nothing happened."

Frye argued that the allegations against the other man created "an established potential ulterior motive for [Co. D.'s] outcry [against Frye], the timing of it, when it happened, [and] who she told it to." According to Frye, this was so because the outcry against him was made approximately three weeks *after* the incident with the other man and, thus, Frye argued that the outcry against him could have been motivated by a desire to shift attention away from the other incident, which he described as a "sex scandal." The trial court denied the motion, ruling that what Frye sought to admit was not encompassed by the exception to the Rape Shield statute. Frye now contends that the trial court's determination was in error.

The trial court did not abuse its discretion by declining to admit the proposed evidence because Frye's proposed evidence did not comport with the narrow exception outlined in *Smith*. Frye sought to admit what he alleged were false

---

[27] The man, who was 19 years old at the time, pleaded guilty to a sexual battery charge stemming from giving Co. D., who was 14 years old at the time, a hickey.

*statements* by Co. D. made during an investigation into suspected sexual misconduct—*i.e.*, Co. D. initially stated that another man had *not* engaged in sexual misconduct with her when, in fact, some sort of sexual misconduct had occurred. Suffice it to say, these statements by Co. D are not prior false *allegations* of sexual misconduct.[28] They are instead the exact type of evidence *prohibited* by the Rape Shield rule (*i.e.*, "evidence relating to the past sexual behavior of the complaining witness"), and the trial court did not abuse its discretion in excluding these statements. Accordingly, Frye's sole enumeration of error is without merit.

For all these reasons, we affirm Frye's convictions.

*Judgment affirmed. Ray and Self, JJ., concur.*

---

[28] *Cf. Benton*, 265 Ga. at 649-50 (5) (holding that trial court erred in excluding evidence regarding victim's prior false allegation of sexual misconduct by her boyfriend, which allegation she subsequently recanted); *Postell v. State*, 261 Ga. 842, 842 (2) (412 SE2d 831) (1992) ("The trial court did not err by excluding evidence regarding the victim's claim that she was raped previously by another man. There is no evidence that the victim accused any individual in connection with this claim. Therefore, the rule . . . authorizing evidence of prior false accusations of rape in a rape trial, does not apply, and the evidence was not otherwise admissible." (citation omitted)); *Smith*, 259 Ga. 135-37 (1) (holding that trial court erred in excluding evidence of alleged prior false accusations by the victim, who had claimed that men other than the defendant engaged in similar sexual misconduct with her but later recanted many of those allegations).

14