304 Ga. 183
FINAL COPY

S18A0478. TERRELL v. THE STATE.

BLACKWELL, Justice.

Willie Terrell was tried by a Fulton County jury and convicted of murder

and related crimes in connection with a shooting that killed Anthony Thomas

and Tanisha Johnson and wounded Tanisha's one-year-old son, K. T.[1] Terrell

---

[1] The shooting occurred on March 18, 2006. On June 9, 2006, a Fulton County grand jury indicted Terrell for malice murder (Counts 1, 2), felony murder (Counts 3, 4), aggravated assault with a deadly weapon (Counts 5-13), and possession of a firearm during the commission of a felony (Count 14). Six of the aggravated assault counts were later dead-docketed. Terrell stood trial on the remaining counts in December 2009, and the jury found him guilty on all counts. (The jury found Terrell not guilty of voluntary manslaughter — an option provided on the verdict form as a lesser included offense for each murder charge.) Terrell was sentenced to consecutive life terms on each of the two malice murder counts, a consecutive 20-year term for an aggravated assault upon K.T., and a consecutive five-year term for possession of a firearm during the commission of a felony. The other counts merged or were vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 373 (5) (434 SE2d 479) (1993). Terrell moved for a new trial on December 15, 2009, and he amended the motion on March 20, 2014. The trial court held a hearing and, on January 20, 2015, it denied the motion. Terrell filed a timely notice of appeal on February 2, 2015, and this case was docketed to the term of this Court beginning in December 2017 and submitted for a decision on the briefs.

We note that this is yet another case with an unusually long delay between the defendant's trial and his direct appeal. See Owens v. State, 303 Ga. 254, 258 (4) (811 SE2d 420) (2018).

now appeals, arguing that the trial court deprived him of his constitutional right to testify. Finding no error, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial shows the following. On March 18, 2006, Terrell visited the apartment of Caressa Johnson — Terrell's former girlfriend and the mother of his five-year-old daughter. A number of friends and family members were in the apartment, including Tanisha (Caressa's sister), K. T., Katresea "Monique" Wardley (Caressa's cousin), and Thomas (Wardley's acquaintance). While there, Terrell got involved in a dispute with Wardley, and, after a verbal exchange, he pushed her to the ground. Thomas confronted Terrell in defense of Wardley, and the two men started fighting or "tussling"; neither person was armed at the time.

The struggle led both men out the front door, and they continued to fight in the breezeway. Thomas was physically bigger than Terrell and had the upper hand — one witness testified that Thomas pinned Terrell against the wall. Nevertheless, Terrell managed to break free of Thomas, went back inside the apartment, and retrieved an SKS rifle that he had placed in Caressa's closet the night before. As Thomas came back in through the front door, Terrell pointed

the rifle at him and said, "I got something for you." Thomas grabbed the barrel of the gun, and the men began to struggle, once more going outside. Thomas fell, and when he got up, Terrell fired numerous shots at him. One of the bullets hit Tanisha while she was holding K. T.; it went through her chest and lodged in K. T.'s arm. Tanisha died almost instantly, but K. T. survived and recovered from his injury. An autopsy revealed that Thomas was hit by twelve bullets, ten of which had entered the back of his body.

Terrell was arrested shortly after the shooting and agreed to speak with a detective. A videotape of this interview was admitted into evidence at trial. Terrell's story to the police was that of self-defense. He explained that, after an altercation with Wardley (who, he said, pushed him first), he was attacked by Thomas, who grabbed him and wrestled him out the door. When Thomas released him, Terrell went back inside the apartment and, preparing to leave, gathered his belongings from the closet, including the rifle. Then, according to Terrell, Thomas tried to snatch the rifle, and the two men struggled for control of the gun inside the apartment, neither gaining the upper hand. During that struggle, Thomas threatened to kill Terrell, and Terrell "pulled the trigger to shoot him." Having fired a single shot, Terrell walked out the front door. But,

3

he said, Thomas came running at him "looking crazy," and so Terrell shot him again. Terrell could not say how many times he fired the gun.

Terrell does not dispute that the evidence is sufficient to sustain his convictions. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence. We conclude that the evidence presented at trial, when viewed in the light most favorable to the verdicts, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Terrell was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also Hoffler v. State, 292 Ga. 537, 539 (1) (739 SE2d 362) (2013) ("Issues of witness credibility and the existence of justification are for the jury to determine, and it is free to reject a defendant's claim that he acted in self-defense.").

2. After the prosecution finished presenting its case, Thomas's lawyer requested a ten-minute recess, which the trial court granted. When proceedings resumed, the lawyer asked the court to advise Terrell of his right to testify. The trial court then engaged Terrell in an extensive colloquy outside the jury's presence, informing him that he had a right to testify or not testify, that no one

4

could prevent him from testifying or compel him to testify, that it was Terrell's and not his lawyer's decision, that a decision not to testify could not be used against him, and that testifying would enable the prosecuting attorney to cross-examine him. Terrell told the court that his lawyer advised him not to testify but that he (Terrell) "[didn't] know what to do." Terrell explained that he wanted to testify but was "too stressed out." Upon further questioning by the court, Terrell said he was upset that no other witnesses would be called on his behalf, and he again stated: "I wish to testify, just not right at this time. I'm too upset right now. I don't think it would be fair to me, and the prosecutor have fair shots at me — unfair shots at me." Terrell asked the court if he could delay testifying until the following morning. The court rejected his request, stating that the jury would be present for another hour and 15 minutes, and that if Terrell wished to testify, he would have to begin that day. When Terrell refused to take the stand, the trial court found that Terrell "chose not to testify, with a complete understanding of his rights."

On appeal, Terrell argues that the trial court deprived him of his right to testify when it gave him an ultimatum, forcing him to either testify that day or waive the right altogether. Terrell contends that this ultimatum was not justified,

given the importance of his right to testify, and that the trial court should have granted a continuance until the next morning, when the jurors would have had to return anyway for closing arguments. We disagree.

While a defendant has a "fundamental constitutional right" to testify on his own behalf, this right is "not without limitation." Danenberg v. State, 291 Ga. 439, 442 (5) (729 SE2d 315) (2012) (quoting Rock v. Arkansas, 483 U. S. 44, 53 (III) & n. 10 (107 SCt 2704, 97 LE2d 37) (1987)). A trial court may impose reasonable restrictions on the defendant's right to testify, as long as those restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." Id. (citation omitted). See also Rock, 483 U. S. at 55 (IV), n. 11 ("Numerous state procedural and evidentiary rules control the presentation of evidence and do not offend the defendant's right to testify."). Moreover, "trial scheduling and requests for continuances are addressed to the sound discretion of the trial court, and this Court will not interfere unless there was a clear abuse of discretion." Johnson v. State, 300 Ga. 252, 259 (4) (794 SE2d 60) (2016). See also OCGA § 17-8-22. We previously have observed that trial judges "necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the

6

same time, and this burden counsels against continuances except for compelling reasons." Ealy v. State, 251 Ga. 426, 429 (3) (306 SE2d 275) (1983) (quoting Morris v. Slappy, 461 U. S. 1, 11 (II) (103 SCt 1610, 75 LE2d 610) (1983)).

With these principles in mind, we cannot say that the trial court deprived Terrell of his right to testify. To begin, there is no dispute that Terrell consulted with his lawyer about his right to testify and that he fully understood the benefits and consequences of testifying. It is also clear that, after engaging Terrell in a colloquy about his right to testify,[2] the trial court gave him a full opportunity to do so, and Terrell voluntarily chose not to testify at that time. Nothing suggests that Terrell was confused about the scope of his right to testify or that he misunderstood what the trial court told him during the colloquy. See, e.g., United States v. Ly, 646 F3d 1307, 1312 (II) (11th Cir. 2011) (pro se defendant's decision not to testify was not knowing and intelligent where he obviously misunderstood the scope of his right to testify and the trial court failed to correct his misunderstanding). Terrell's only problem was that he

---

[2] Notably, a trial court is not required to inform the defendant about his right to testify — "whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with his trial counsel." Spencer v. State, 287 Ga. 434, 438-439 (3) (696 SE2d 617) (2010). But it is the "better practice" for a trial court to so inform the defendant, to avoid post-conviction challenges. Id.

7

wished to testify but not at the time set by the court. So the real issue here is whether the trial court abused its discretion in refusing to grant a continuance to Terrell until the next morning, as Terrell requested.

We conclude that no abuse of discretion occurred. Terrell did not explain to the trial court why a continuance was necessary for him to testify, other than saying he was "stressed out" and "too upset right now." While no doubt the proceedings were of great importance to Terrell, with his freedom at stake, such is the case with any defendant in a murder trial. It is not clear why a continuance until the next day would have caused Terrell to be less stressed or upset. Cf. Weis v. State, 287 Ga. 46, 55 (1) (d) (694 SE2d 350) (2010) (observing, in the context of a speedy trial analysis, that "anxiety and concern of the accused are always present to some extent" (citation and punctuation omitted)). See also United States v. Alexander, 869 F2d 808, 811 (5th Cir. 1989) (no abuse of discretion in denying continuance where defendant had "acute anxiety" but "was not suffering from any disease or defect which would prevent him from assisting in his own defense or from testifying in his own behalf").

The only specific reason Terrell offered for being upset is that he did not have other witnesses to testify on his behalf. But the trial court had no indication

8

that this situation would have changed by the next morning. Terrell also implied that he was afraid of being cross-examined, saying that he did not want the prosecutor to have "unfair shots at me." But again, cross-examination is not something Terrell could have avoided by delaying his testimony until the next day. In sum, Terrell has not shown any convincing need for a continuance, and the trial court reasonably could believe that any delay would have been fruitless. Thus, the trial court did not abuse its discretion in denying a continuance and did not deprive Terrell of his right to testify. See Davis v. State, 240 Ga. 763, 765 (1) (243 SE2d 12) (1978) (no abuse of discretion in denying a continuance where no showing was made "as to how additional time would have benefited defendant or how the lack of time harmed him"). See also Childs v. State, 257 Ga. 243, 255 (18) (357 SE2d 48) (1987) (at sentencing phase of death penalty trial, a fifteen-minute recess gave counsel enough time to confer with defendant about his decision to testify, "and the court's refusal to grant an overnight recess did not deprive the defendant of his right to testify"). For the foregoing reasons, we affirm.

Judgment affirmed. All the Justices concur.

Decided June 4, 2018 – Reconsideration denied July 12, 2018.

Murder. Fulton Superior Court. Before Judge Schwall.

Clifford L. Kurlander, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Arthur C. Walton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.